# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-2392

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff,

v.

HOMEADVISOR, INC.,

    Defendant.

## CLASS ACTION COMPLAINT

### Preliminary Statement

1. Plaintiff Jourey Newell ("Plaintiff" or "Mr. Newell") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mr. Newell alleges that HomeAdvisor, Inc. ("HomeAdvisor") made automated telemarketing calls to Mr. Newell and other putative class members without their prior express written consent.

3. Mr. Newell and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Newell brings this action on behalf of a proposed

nationwide class of other persons who received illegal telemarketing calls from or on behalf of HomeAdvisor.

4.     A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

## Parties

5.     Plaintiff Jourey Newell currently resides in Pennsylvania.

6.     Defendant HomeAdvisor, Inc. is a Delaware corporation with its principal place of business at 14023 Denver West Parkway, Suite 100, Golden, Colorado 80401.

## Jurisdiction & Venue

7.     This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005 ("hereinafter referred to as CAFA"), codified as 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds $5,000,000, in the aggregate, exclusive of interest and costs, as each member of the proposed class of at least tens of thousands is entitled to up to $1,500.00 in statutory damages for each call that has violated the TCPA.  Further, Plaintiff alleges a nationwide class, which will result in at least one class member from a different state.

8.     The Court has federal question subject matter jurisdiction over these TCPA claims.  *Mims*, 132 S. Ct. 740.

9.     The Court has personal jurisdiction over HomeAdvisor because HomeAdvisor maintains its principal place of business in Colorado.

10. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this district, as the automated calls were made from this district, and because the Defendant resides in this district.

## TCPA Background

11. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

<u>The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones</u>

12. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

14. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations*

*Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

15. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

16. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

17. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-

consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf.

18. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

19. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-rise-illegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-many-robocalls-heres-what-you-can-do-about-them-1530610203.

20. A technology provider combating robocalls warned that nearly half of all calls to cell phones next year will be fraudulent. Press Release, First Orion, *Nearly 50% of U.S. Mobile Traffic Will Be Scam Calls by 2019* (Sept. 12, 2018), https://www.prnewswire.com/news-releases/nearly-50-of-us-mobile-traffic-will-be-scam-calls-by-2019-300711028.html.

**Factual Allegations**

Calls to Mr. Newell

21. Plaintiff Newell is a "person" as defined by 47 U.S.C. § 153(39).

22. Mr. Newell's telephone number, (484) 250-XXXX, is registered to a cellular telephone service.

23. Mr. Newell has also placed this telephone number on the National Do Not Call Registry.

24. On April 18, 2019, Mr. Newell received an automated telemarketing call from HomeAdvisor from the caller ID (720) 696-8729.

25. When Mr. Newell picked up the phone, there was a long pause before a sales representative finally came on the line to greet him.

26. This extended pause is a telltale sign of a predictive dialer.

27. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once and only transfers the call to a live agent once a human being is on the line.

28. As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

29. A predictive dialer is an ATDS as that term is defined by the TCPA.

30. Because of the predictive dialer, Mr. Newell was greeted with dead air for the call, and then finally a live person came on the line.

31. "Ally Yates" came on the line and proceeded to promote HomeAdvisor's services of connecting consumers to local home improvement contractors.

32. In order to determine and confirm the identity of the caller, Mr. Newell feigned interest in the sales pitch but informed Ms. Yates to send him an email with her contact info and that he would call her back if interested.

33. Ms. Yates sent Mr. Newell a follow up email from the email address ally.yates@homeadvisor.com with her HomeAdvisor contact information, confirming she is a HomeAdvisor employee.

34. Mr. Newell then received a series of three additional automated telemarketing calls from HomeAdvisor on April 19 and 22, 2019.

35. These calls were also from Ally Yates of HomeAdvisor but came from the caller ID (267) 573-6158.

36. This caller ID was "spoofed" in order to appear to Mr. Newell as if it was coming from a local area code.

37. Like the first call, Plaintiff was greeted with dead air before a live representative came on the line.

38. The fact that the Caller ID was spoofed is further evidence of the use of an ATDS, as it typically takes a computer dialing system to manipulate the Caller ID that will display on the call recipient's phone.

39. Plaintiff is not a customer of Defendant and has not consented to receive telemarketing calls prior to the receipt of these calls.

40. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls, and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance, and disturbed the solitude of Plaintiff and the class.

## Class Action Allegations

41. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

42. The class of persons Plaintiff proposes to represent is tentatively defined as:

All persons within the United States to whom: (a) HomeAdvisor, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) that promoted HomeAdvisor's services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice; and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

43. Excluded from the class are counsel, the Defendant, any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

44. The class as defined above is identifiable through phone records and phone number databases.

45. The potential class's members number at least in the thousands. Individual joinder of these persons is impracticable.

46. Plaintiff is a member of the class.

47. There are questions of law and fact common to Plaintiff and to the proposed class, including but not limited to the following:

   a. Whether Defendant violated the TCPA by using automated calls to contact putative class members' cellular telephones;

   b. Whether Defendant placed calls without obtaining the recipients' prior express invitation or permission for the call; and

   c. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

48. Plaintiff's claims are typical of the claims of class members.

49. Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

50. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

51. The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

52. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**Legal Claims**

**Count One:**
**Violation of the TCPA's Automated Call Provisions**

53. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. The Defendant violated the TCPA (a) by initiating automated telephone solicitations to cellular telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

55. The Defendant's violations were willful and/or knowing.

56. Plaintiff and members of the class are also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

**Relief Sought**

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A. Injunctive relief prohibiting Defendant from calling telephone numbers using an artificial or an automated voice;

B. Because of Defendant's violations of the TCPA, Plaintiff Newell seeks for himself and the other putative class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

C. An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate classes the Court deems appropriate, finding that Plaintiff is a proper representative of the class, and appointing the lawyers and law firms representing Plaintiff as counsel for the class; and

D. Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

*Counsel for Plaintiff*