**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-2392

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff,

v.

HOMEADVISOR, INC.,

    Defendant.

---

**DEFENDANT HOMEADVISOR, INC.'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE THE CLASS ALLEGATIONS**

---

Defendant HomeAdvisor, Inc. ("HomeAdvisor") moves to dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) and to strike the class allegations pursuant to Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D).

## INTRODUCTION

Plaintiff alleges that HomeAdvisor made telemarketing calls to his cellular telephone via an automated telephone dialing system ("ATDS") without his prior express consent in violation of the Telephone Consumer Protection Act ("TCPA"). However, Plaintiff's claim must be dismissed because the TCPA provision on which Plaintiff relies—47 U.S.C. § 227(b)(1)(A)(iii)—is unconstitutional as applied to HomeAdvisor.

HomeAdvisor challenges the constitutionality of the TCPA on two primary grounds. *First,* the TCPA is an unconstitutional content-based restriction on speech. Plaintiff's putative class action, and others like it, have a substantial chilling effect on constitutionally protected speech.

And the vehicle with which they bring such actions—the TCPA—discriminates based on the content of the speech, which triggers strict scrutiny under the Supreme Court's 2015 decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015). Without question, the TCPA does not pass strict scrutiny in its present form, as two Courts of Appeal have recently determined. *Am. Ass'n of Political Consultants v. FCC,* 923 F.3d 159 (4th Cir. 2019) (hereinafter "*AAPC*"); *Duguid v. Facebook, Inc.,* 926 F.3d 1146 (9th Cir. 2019). But contrary to *AAPC* and *Duguid,* the TCPA cannot be saved by severing one content-specific exemption in the TCPA. Severing an exemption to expand a statute restricting speech runs contrary to basic First Amendment tenets. And, because the TCPA's restrictions concerning calls to cell phones are not narrowly tailored to furthering the compelling governmental interest of residential privacy, the statute remains unconstitutional as applied to HomeAdvisor.

*Second*, the TCPA's definition of an ATDS, compounded by the failure of the Federal Communications Commission ("FCC") to provide adequate guidance, render Section 227(b)(1)(A)(iii) unconstitutionally vague. The overbroad and hopelessly vague ATDS formulation does not give HomeAdvisor adequate advance notice of what technology and what speech is (and is not) permissible under the TCPA. Thus, the TCPA cannot be constitutionally applied to HomeAdvisor in this suit.

To the extent that the Court finds that Plaintiff's Complaint states a claim, it should nonetheless strike the class allegations because the proposed class cannot be certified as a matter of law. First, Plaintiff's proposed class does not account for individuals who consented to receive calls from HomeAdvisor, and thus, the class includes putative class members who have no claim against HomeAdvisor. The proposed class is therefore overbroad, and commonality and

predominance are lacking. In addition, the proposed class is not defined based on objective criteria but instead relies on the liability determination of whether a putative class member was called with an ATDS. The class allegations should therefore be stricken now, because HomeAdvisor would be prejudiced – and judicial resources wasted – if the case were allowed to continue with a patently uncertifiable class definition.

**CERTIFICATE OF CONFERRAL**

Pursuant to Section III.D.1 of the Practice Standards for Civil and Criminal Matters Before the Honorable William J. Martinez, the undersigned counsel hereby certifies that she conferred with counsel for Plaintiff regarding this Motion and its bases by telephone on October 1, 2019, and counsel for Plaintiff opposes this Motion.

**ARGUMENT**

I.   **The TCPA Is Unconstitutional As Applied To HomeAdvisor.**

    A.   **Legal Standard.**

This Court is empowered to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hodgson v. Farmington City,* 675 F. App'x 838, 840 (10th Cir. 2017) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). But "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the claim should be dismissed. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

### B. The TCPA Is An Unconstitutional Restriction On Speech.

#### 1. The TCPA Fails First Amendment Principles As Applied.

##### a. Under The First Amendment, Strict Scrutiny Applies To The TCPA.

Since the Supreme Court's landmark First Amendment decision in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015), courts, including most recently the Fourth and Ninth Circuits, have agreed that strict scrutiny applies because the TCPA is a content-based restriction on speech. *See, e.g.*, *AAPC*, 923 F.3d at 167; *Duguid*, 926 F.3d at 1153. These decisions agree that the TCPA is content-based, but they understate the extent to which that is the case. They focus on the fact that the TCPA exempts all calls made to collect government-backed debt—regardless of whether the caller is a government entity or a private debt collector—but applies to efforts to collect a private debt. *See Duguid*, 926 F.3d at 1154-56 (discussing the TCPA's discrimination between government-backed debt and private debt). But the text of the TCPA and the FCC's implementation of it contain additional content-based restrictions, including an exemption for emergency calls[1] and an FCC-created exemption for certain healthcare-related calls.[2] However, the FCC declined to extend the exemption to healthcare calls related to "telemarketing, solicitation, or advertising content, or which include accounting, billing, debt-collection, or other financial content."[3]

##### b. The TCPA Fails Strict Scrutiny.

Under the First Amendment, the government "has no power to restrict expression because

---

[1] 47 U.S.C. § 227(b)(1)(A)(iii).

[2] *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2015 Declaratory Ruling, 30 FCC Rcd. 7961, 8030 ¶ 146 (July 10, 2015).

[3] *Id.*

of its message[s], its ideas, its subject matter, or its content." *Police Dep't. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). Thus, the Supreme Court held in *Town of Gilbert* "[c]ontent-based laws—those that target speech based on its communicative content—are *presumptively unconstitutional* and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." 135 S. Ct. at 2226 (emphasis added). Further, "differentiation between [content] . . . [must] further[] a compelling governmental interest and [be] narrowly tailored to that end." *Id.* at 2231. Laws that regulate speech-based content violate the First Amendment unless they can pass an exacting form of strict scrutiny. *Id.*

To determine if a content-based restriction withstands strict scrutiny, the reviewing court "must identify with care the interests the State itself asserts" in maintaining the speech restriction, and may not "supplant the precise interests put forward by the State with other suppositions." *Edenfield v. Fane*, 507 U.S. 761, 768 (1993). The burden is on the party defending a content-based restriction to advance record evidence that the harms Congress identified are real. *Id.* The party defending a content-based restriction must also advance evidence that the content-based distinctions serve the asserted interest. *See Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 424 (1993) (striking down city ordinance because "the [content-based] distinction bears no relationship whatsoever to the particular interests that the city has asserted.").

Here, application of the TCPA to HomeAdvisor fails strict scrutiny. Plaintiffs in TCPA cases typically argue that the government has an interest in protecting the "privacy" of cell phone users to justify the TCPA's onerous restrictions. However, Congress enacted the TCPA to target a particular problem – telemarketing robocalls that used specialized machines dialing random or

5

sequential phone numbers, or that used prerecorded/artificial messages – lacking interactivity and invading *residential* privacy. Pub. L. No. 102-243, § 2, ¶¶ 1, 12, 105 Stat. 2394, 2394-95 (1991).

As the Eleventh Circuit recently explained, however, there is generally "less congressional concern about calls to cell phones"; the TCPA is not intended to be applied so broadly and restrictively when—as here—there is no indication that the calls to a cellular telephone "involve an intrusion into the privacy of the home in the same way that a voice call to a residential line necessarily does." *See Salcedo v. Hanna*, — F.3d —, 2019 U.S. App. LEXIS 25967, at *12–13 (11th Cir. Aug. 28, 2019). In enacting the TCPA, Congress was concerned with "residential telemarketing practices" and "intrusive invasion[s]" into residential privacy, not privacy in general. Pub. L. No. 102-243, § 2, ¶¶ 5, 7.

Congress's prohibition on the use of ATDSs targeted harmful telemarketing practices that emerged in the 1980s. During that time, "telemarketers typically used autodialing equipment that either called numbers in large sequential blocks or dialed random 10-digit strings." *Dominguez v. Yahoo, Inc.*, 629 Fed. App'x. 369, 372 (3d Cir. 2015). Random dialing allowed callers to reach and tie up unlisted and specialized numbers. *See* S. Rep. No. 102-178, at 2 (1991). And sequential dialing allowed callers to reach all numbers in an area, creating a "potentially dangerous" situation in which no outbound calls (including emergency calls) could be placed. H.R. Rep. No. 102-137, at 10 (1991). The actual governmental interest was therefore to stop one very specific type of telemarketing practice—dialing randomly and sequentially generated numbers—not to protect a vague and undefined privacy interest.

Even if the government arguably had some compelling interest supporting the TCPA's content-based prohibitions, the prohibitions are not narrowly tailored to further such an interest.

*See Reed*, 135 S. Ct. at 2330-31.  Narrow tailoring requires targeting "no more than the exact source of the 'evil' [the regulation] seeks to remedy."  *Frisby*, 487 U.S. at 485.  Thus, to survive narrow tailoring analysis, the government may not restrict constitutionally protected speech unless "it chooses the least restrictive means to further the articulated interest." *Sable Commc'ns of Cal., Inc. v. FCC*, 492 U.S. 115, 126 (1989).

Here, there is no allegation that HomeAdvisor's "predictive dialer" employs the type of random or sequential number generation that the TCPA was designed to prevent to avoid tying up phone lines.  Consequently, applying the TCPA to HomeAdvisor's technology does not further any government interest in prohibiting autodialed calls and specifically protecting residential privacy from random intrusion.

As discussed in detail below, the shifting landscape concerning the definition of ATDS makes the TCPA void for vagueness, but in addition, it also makes clear that the TCPA fails even if intermediate scrutiny applies.  With conflicting and changing guidance on what technology qualifies as an ATDS, viable alternative channels were not available to HomeAdvisor during the class period.

    **2.**  **The TCPA Must Be Struck Down In Its Entirety.**

If this Court finds the TCPA unconstitutional, it must strike down the TCPA in its entirety.  Contrary to *AAPC* and *Duguid,* the proper remedy for an unconstitutional content-based restriction is not severance.  The TCPA is unconstitutional for what it forbids, not for what it permits.  So a strict scrutiny analysis must focus on the unlawful restrictions—not the content-based exemptions.  Hence, in First Amendment free speech cases, unlike cases involving other constitutional challenges, courts will not sever a statute if "[e]liminating the offending exception would mean

that we would be requiring the State to restrict *more* speech than it currently does." *Rappa v. New Castle Cnty.*, 18 F.3d 1043, 1072-73 (3d Cir. 1994) (emphasis in original). "[I]f courts were to sever exceptions from content discriminatory statutes, individuals would lose much of their incentive to challenge such statutes, because those whose speech is banned would often not benefit from the remedy." *Id.*[4]

### C. The TCPA Is Unconstitutionally Vague As Applied To HomeAdvisor.

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). The Constitution requires that statutes be set forth with "sufficient definiteness that ordinary people can understand what conduct is prohibited." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). This definiteness is required to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned*, 408 U.S. at 108. Moreover, exacting precision is required for restrictions on free speech in order to avoid the risk of otherwise chilling constitutionally protected speech. *See, e.g., Reno v. American Civil Liberties Union*, 521 U.S. 844, 871-72 (1997) (explaining that the vagueness of a "content-based regulation of speech . . . raises special First Amendment concerns because of its obvious chilling effect on free speech").

Even in a facial vagueness challenge, a statute need not be vague in all applications to be void if it reaches a "substantial amount of constitutionally protected conduct." *Kolender*, 461 U.S. at 359, n. 8 (quoting *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489,

---

[4] Moreover, severing the government-backed debt exemption does not convert the TCPA to a content neutral statute. As set forth above, the FCC has enacted numerous content-specific restrictions.

8

494 (1992)). The need for definiteness is heightened when affecting constitutionally protected rights as opposed to mere economic behavior. *Village of Hoffman Estates*, 455 U.S. at 498.

The TCPA is also unconstitutionally vague. The ATDS restrictions imposed by the TCPA are unconstitutionally vague because they fail to give a person of ordinary intelligence adequate notice of what constitutes an ATDS. The TCPA defines an ATDS as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

As written, the statute covers only dialers that call randomly or sequentially, and some courts have so held. *See, e.g., Dominguez v. Yahoo, Inc.*, 894 F. 3d 116, 121 (3d Cir. 2018). Problematically, though, other courts have adopted different functionalities, some—such as *Marks*, 904 F.3d at 1052 —by rewriting the statute to cover all dialers that call "automatically" (another undefined term) from "stored" numbers, and others—such as *Reyes v. BCA Financial Services, Inc.*, 312 F. Supp. 3d 1308, 1320 (S.D. Fla. 2018)—by grafting the FCC's vague rulings from 2003 onto the statutory language. *Compare Gonzales v. Hosopo Corp.*, 371 F. Supp. 3d 26 (D. Mass. 2019) (adopting the *Marks* ATDS formulation) *with Thomas-Harbach v. USAA Fed. Sav. Bank*, 359 F. Supp. 3d 606 (N.D. Iowa Jan. 9, 2019) (rejecting the *Marks* ATDS formulation).

Not only do courts not agree on what an ATDS must do—and thus callers cannot determine what functionalities their dialers must avoid—but the contours of the necessary "capacity" to perform those functions is not defined in the statute. In 2015, the FCC drastically broadened the definition of an ATDS to include not only equipment that has the "present ability" to automatically dial, but also the "potential" or "future capacity" to do so. FCC Order, 30 FCC Rcd. at 7971-72, 7974-76, 8089 ¶¶ 10, 16, 19.

However, in March 2018, the D.C. Circuit unanimously set aside the FCC's broad ATDS interpretation. *ACA Int'l v. FCC*, 885 F.3d 687, 700-01 (D.C. Cir. 2018). The D.C. Circuit concluded that the FCC's ATDS interpretation was an "unreasonably expansive interpretation of the statute" and criticized the FCC's 2015 Order for failing to provide meaningful, reasoned guidance as to the meaning of "using a random or sequential number generator." *Id.* at 692, 701. The Court also noted that the FCC had failed to clarify "whether a device must itself have the ability to generate random or sequential telephone numbers to be dialed" or whether it is "enough if the device can call from a database of telephone numbers generated elsewhere[.]" *Id.* at 701.

Further, the D.C. Circuit made clear that the FCC must provide guidance to parties who are "left in a significant fog of uncertainty about how to determine if a device is an ATDS." *Id.* at 29. Thus, the FCC issued a public notice seeking comments on a new definition of ATDS that comports with *ACA International*. *See Consumer and Governmental Affairs Bureau Seeks Comment on Interpretation of the Telephone Consumer Protection Act in Light of the D.C. Circuit's ACA International Decision*, CG Docket No. 18-152, CG Docket No. 02-278, DA 18-492 (May 14, 2018).

The uncertainty outlined in *ACA International* has only been compounded by the Ninth Circuit's decision in *Marks*, 904 F.3d at 1052, in which the court re-wrote the definition of an ATDS to include every dialer that has the capacity to call from a list of numbers "automatically."[5] *Id.* at 1052. The term "automatically" is vague and undefined, as is the term "capacity." In

---

[5] In response to *Marks*, the FCC reopened the comment period to allow for further comment on the meaning of ATDS. *Consumer and Government Affairs Bureau Seeks Further Comment on Interpretation of the Telephone Consumer Protection Act in Light of the Ninth Circuit's Marks v. Crunch San Diego, LLC Decision*, CG Docket No. 18-152, CG Docket No. 02-278, DA 18-1014 (Oct. 3, 2018).

contrast, the Third Circuit has held that an ATDS must have "the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers." *Dominguez*, 894 F. 3d at 121. Additionally, as already noted above, in district courts outside of the Third and Ninth Circuits, there are inconsistent rulings on what constitutes an ATDS.

As a result, HomeAdvisor cannot readily determine what type of dialing technology constitutes an ATDS under the statute and therefore what type of conduct is prohibited. Accordingly, the TCPA is unconstitutionally vague and risks chilling lawful attempts of businesses to legitimately contact consumers.

## II.     The Class Allegations Should Be Stricken.

### A.      Legal Standard.

"The class action is an 'exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." *Id.* (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A court should address whether to certify a proposed class "[a]t an early practicable time," and if the prerequisites of Rule 23 cannot be satisfied, it may "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(c)(1)(A), (d)(1)(D). Similarly, under Rule 12(f), a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). This Court has granted a pre-discovery motion to strike the class allegations where – as here – a plaintiff has pled an overbroad class that cannot be certified regardless of discovery. *Edwards v. Zenimax*

*Media, Inc.*, Civil Action No. 12-cv-00411-WYD-KLM, 2012 U.S. Dist. LEXIS 137520, at *18 (D. Colo. Sep. 25, 2012).

The Court may certify a class only if Plaintiff satisfies all of the requirements of Federal Rule of Civil Procedure 23(a) and at least one requirement of Rule 23(b). Fed. R. Civ. P. 23; *Wal-Mart,* 564 U.S. at 344. This means that a Plaintiff must satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation. Here, Plaintiff seeks to certify a class under Rule 23(b)(3), and therefore must also establish that common questions of law or fact predominate and that a class action is superior to other available methods of adjudication. *See* Cplt. ¶ 50; Fed. R. Civ. P. 23(b)(3).

"Finally, although not specifically mentioned in Rule 23, there must be an ascertainable class." *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 555 (D. Colo. 2014). To be ascertainable, a class must be administratively feasible, which "'means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry.'" *Id.* at 556 (quoting *Carrera v. Bayer Corp.,* 727 F.3d 300, 307-08 (3d Cir. 2013)). And related to the ascertainability inquiry are problems with overbreadth of the class. *Id.* at 557. "A class is overbroad, and should not be certified, if it includes a 'great number of members who could not have been harmed by the defendant's allegedly unlawful conduct.'" *Id.* (quoting *Messner v. Northshore Univ. Healthsystem,* 669 F.3d 802, 824-25 (7th Cir. 2012)).

    **B.**    **The Proposed Class Definition Is Overbroad.**

Plaintiff seeks to certify the following class:

> All persons within the United States to whom: (a) HomeAdvisor, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) that promoted HomeAdvisor's services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice;

and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

Cplt. (ECF No. 1) ¶ 42. Under the TCPA, a call made with prior express consent is lawful. *See* 47 U.S.C. § 227(b)(1)(A)(iii). Thus, in TCPA cases, the central issue to be adjudicated is that of consent. *See Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 327, 329 (5th Cir. 2008). Plaintiff's class definition includes *everyone* who received a call from HomeAdvisor promoting its services. While Plaintiff alleges he did not consent to the challenged calls (Cplt. ¶ 39), he asserts no facts from which it can be plausibly inferred that *no other class member* receiving such calls consented to receive them. Indeed, Plaintiff pleads nothing about the source of the phone numbers called by HomeAdvisor at all, and his class definition simply ignores the issue of consent altogether.

For example, while Plaintiff pleads he "is not a customer" of HomeAdvisor (Cplt. ¶ 39), his proposed class includes HomeAdvisor customers, who consented to receive promotional calls from HomeAdvisor.[6] Plaintiff's proposed class is, therefore, overbroad. In *Edwards,* this Court granted a motion to strike where the proposed class included anyone who purchased a particular video game, regardless of whether the person had been injured or even experienced the purported defect. 2012 U.S. Dist. LEXIS 137520, at *12. *See also Warnick,* 301 F.R.D. at 559 (denying class certification in TCPA case and finding that class was overbroad and not sufficiently ascertainable where, among other problems, one sub-class included persons called with consent).

Indeed, allowing an overly broad class to proceed beyond the pleadings stage creates an inherent unfairness to the defendant in view of the "*in terrorem* character of a class action." *Kohen v. Pac. Inv. Mgmt. Co. LLC & PIMCO Funds*, 571 F.3d 672, 688 (7th Cir. 2009). Given the

---

[6] *See* HomeAdvisor Terms and Conditions, ¶ 5 at https://www.homeadvisor.com/servlet/TermsServlet (last visited on September 27, 2019).

exposure in class actions, even weak claims "might force a defendant to settle a meritless claim in order to avoid breaking the company. While that prospect is often feared with large classes, the effect can be magnified unfairly if it results from a class defined so broadly as to include many members who could not bring a valid claim even under the best of circumstances." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012) (internal citation omitted). This is particularly true in TCPA actions, where the statute provides for a minimum of $500 in statutory damages per violation. *See* 47 U.S.C. § 227(b)(3)(B).

Here, Plaintiff's proposed class is overbroad because, by definition, it includes individuals who validly consented to receive calls from HomeAdvisor. Allowing this action to proceed with the proposed class definition would therefore work an inherent unfairness against HomeAdvisor, which will be required to undertake the burden and expense of defending against a putative class that contains members who have no conceivable claim. Where the defect in the class is definitional—which is the case here—striking the class allegations at the pleading stage is appropriate because discovery will not change or cure anything. As this Court found in *Edwards*, "[t]o allow discovery when [plaintiff] has alleged an unascertainable class would be futile." 2012 U.S. Dist. LEXIS 137520, at *17.[7]

---

[7] To certify a class action, the putative class members also must be in a common factual or legal position on an issue critical to the outcome of the case. *See* Fed. R. Civ. P. 23(a)(2). In addition, to certify a class under Rule 23(b)(3), common issues of fact and law must predominate over individual ones. Without addressing consent, however, there is no commonality glue holding class members together—that they all received calls says nothing about whether or not those calls violated the TCPA. Courts have consistently found that where individualized consent inquiries are required, class treatment is inappropriate. *See, e.g.*, *Powell v. YouFit Health Clubs LLC*, No. 17-cv-62328, 2019 U.S. Dist. LEXIS 28843, at *14–15 (S.D. Fla. Feb. 22, 2019) (denying reconsideration of denial of class certification where issues of consent would predominate); *Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 460 (M.D. Fla. 2018) ("Defendant would likely have

### C.     The Class Definition Is Not Based On Objective Criteria.

A class must be "sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member" and "must also be adequately defined [such that] its members can be ascertained by reference to objective criteria." *Fuentes v. Compadres, Inc.,* No. 17-cv-01180-CMA-MEH, 2018 U.S. Dist. LEXIS 78197, at * 8 (D. Colo. May 9, 2018). Here, Plaintiff's proposed class is not based on objective criteria. Rather, to determine class membership, the Court will have to resolve the disputed question of whether a class member was called with an ATDS. Indeed, one court recently "decline[d] to define a class using [this] disputed term of art" because "[t]he proposed class definition, which relies solely on plaintiff's characterization of an ATDS, rather than an ascertainable fact, lacks the clarity required to determine who is in the class." *Pine v. A Place for Mom, Inc.,* No. C17-1826-TSZ, 2019 U.S. Dist. LEXIS 164560, at *2 (W.D. Wash. Sept. 25, 2019).

### **CONCLUSION**

For the aforementioned reasons, HomeAdvisor respectfully requests the Court to dismiss the Complaint, or alternatively, to strike the class allegations.

---

a possible [consent] defense against many class members, the precise contours of which could vary substantially."); *Shamblin v. Obama for Am.*, No. 8:13-cv-2428-T-33TBM, 2015 U.S. Dist. LEXIS 54849, at *29 (M.D. Fla. Apr. 27, 2015) ("Individualized inquiries into consent (including where, how, and when) will predominate.").

15

Dated: October 7, 2019			Respectfully submitted,

*/s/ Brent R. Owen*
Brent R. Owen, #45068
David Blake, #25202
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, Colorado  80202
O  303 830 1776
F  303 894 9239
Brent.owen@squirepb.com
David.blake@squirepb.com

Eric J. Troutman
Emily L. Wallerstein
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
O  213 624 2500
F   213 623 4581
eric.troutman@squirepb.com
emily.wallerstein@squirepb.com

Amy Brown Doolittle
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC  20037
O  202 457 6000
F  202 457 6315

*Attorneys for Defendant HomeAdvisor, Inc.*
16