**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-2392

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,

Plaintiff,

v.

HOMEADVISOR, INC.,

Defendant.

---

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

The Plaintiff Jourey Newell brings this putative class action alleging that HomeAdvisor, Inc. violated the Telephone Consumer Protection Act, 47 U.S.C. 227 ("TCPA"), through its use of an Automatic Telephone Dialing System ("ATDS") to make unsolicited automated telemarketing calls to him and other putative class members. The TCPA is a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012).

First, the Court should reject HomeAdvisor's First Amendment challenge to the TCPA, which, enacted in 1991, has repeatedly overcome various such challenges, including challenges substantively identical to the one here. This Court should follow every other court that has addressed the issue—including the Fourth and Ninth Circuits this year—and refuse to invalidate the entire TCPA because of particularized exceptions to the TCPA inapplicable to the litigation in which the challenges arise. The fact that courts have varied in their interpretation of what

constitutes an autodialer under the TCPA does not render the TCPA unconstitutionally vague or require a different conclusion.

Second, even though the Plaintiff has plainly alleged that HomeAdvisor engaged in a "cold call" telemarketing campaign, which does not require individual inquiries to determine consent, HomeAdvisor seeks to avoid discovery and short circuit this litigation by arguing that Plaintiff and the Court should simply take Defendant's word that no class can possibly be certified in this case because consent is an individual issue. However, at this pre-discovery stage, HomeAdvisor cannot simply allude to a possible consent defense to prevent discovery. Ultimately, if HomeAdvisor's argument was adopted, no TCPA action could be certified if the defendant vaguely alluded to a possible consent defense at the start of the litigation. But this is simply not the case. "Class certification is normal in litigation under [the TCPA], because the main questions … are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *see also Chapman v. Wagener Equities, Inc.*, No. 09-c-07299, 2014 WL 540250, at *15 n.11 (N.D. Ill. 2014), *leave to appeal denied* 747 F.3d 489 (7th Cir. 2014) (discussing "the many cases decided during and since 2011 in which TCPA classes have been certified, as well as the Seventh Circuit's observation in *Turza* that class certification is the norm in TCPA cases").

# I. FACTUAL BACKGROUND

HomeAdvisor is in the telemarketing business. It purchases consumer data (e.g., names and telephone numbers) from third-party data brokers and then robocalls those telephone numbers. This is exactly the type of conduct the TCPA prohibits, and Plaintiff in this case alleges that HomeAdvisor engaged in the exact same conduct here. Plaintiff alleges that

HomeAdvisor's calls in this case were placed to cellular telephone numbers in violation of 47 U.S.C. § 227(b)(1)(A), which prohibits "any call … using any automatic telephone dialing system … to any telephone number assigned to … cellular telephone service…."

The Plaintiff seeks to certify the following class:

> All persons within the United States to whom: (a) HomeAdvisor, and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) that promoted HomeAdvisor's services; (c) to their cellular telephone number; (d) using an automatic telephone dialing system or an artificial or prerecorded voice and (e) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

ECF No. 1, ¶ 42.

## II. ARGUMENT

### A. The TCPA's Restrictions are Fully Consistent with the First Amendment.

When Congress enacted the TCPA in 1991, it found that the volume of unwanted calls had increased substantially with the advent of low-cost, automated devices that were able to dial as many as one thousand phone numbers per hour and deliver a prerecorded message to the person being called. S. Rep. No. 102-178, at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1970. Even with the technologies available at that time, tens of thousands of solicitors were collectively calling millions of people each day. *Id*. In addition to its concern about the volume of automated calls, "Congress determined that such calls were more of a nuisance and a greater invasion of privacy than calls placed by live persons." *Moser v. FCC*, 46 F.3d 970, 972 (9th Cir. 1995) (quotation marks omitted). The TCPA "amend[ed] the Communications Act of 1934 to prohibit certain practices involving the use of telephone equipment." L. No. 102-243, 105 Stat. 2394 (Dec. 20, 1991).

Content-neutral laws like the TCPA are to be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication. *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). A court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed v. Town of Gilbert, Arizona*, 135 S. Ct. 2218, 2227 (2015) (quoting *Sorrell v. IMS Health, Inc.*, 564 U.S. 552, 566 (2011)).

Looking to the face of the TCPA restriction at issue, its central provision broadly limits "any person" from using an automatic telephone dialing system or an artificial or prerecorded voice "to make any call" to a cellular telephone line. 47 U.S.C. § 227(b)(1). The restriction generally applies to all calls with two exceptions: (1) calls "for emergency purposes" and (2) calls made "with the prior express consent of the called party." *Id.* Each of these exceptions "are based on the relationship of the speaker and recipient of the message rather than the content of the message." *Patriotic Veterans, Inc. v. State of Indiana*, 177 F. Supp. 3d 1120, 1125 (S.D. Ind. 2016). The restriction at issue does not draw distinctions based on the content of the speech or any message expressed. It does not protect specific categories of speech while prohibiting others.

Because the TCPA is content-neutral, it is analyzed under the standards applicable to restrictions on the time, place, or manner of engaging in free speech—not "strict scrutiny," as HomeAdvisor would have it. *See Ward*, 491 U.S. at 791. Under this standard, the TCPA does not run afoul of the First Amendment so long as it is "narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of [ ] information." *McCullen v. Coakley*, 573 U.S. 464, 477 (2014). Notably, the Fourth Circuit has

already applied this standard and upheld the TCPA. *See Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376-77 (4th Cir. 2013).

Applying the proper standard in this case, residential privacy and tranquility have been recognized as significant governmental interests. *See, e.g., Frisby v. Schultz*, 487 U.S. 474, 484 (1988). HomeAdvisor does not dispute this. Next, the TCPA's ATDS provision is narrowly tailored to achieve the government's interests. To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing those interests. "Rather, the requirement of narrow tailoring is satisfied so long as the … regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (quotations omitted). Here, the limits on the use of ATDS calls are designed to remedy the problems perceived with the use of ATDS technology. Further, although the use of ATDS technology is limited, the live operator and prior consent options allow the continued use of ATDS technology while protecting the interests of the recipient. To be sure, there must be a "close fit" between ends and means, *McCullen*, 573 U.S. at 486, and such a fit exists here. Further, the TCPA does not "foreclose an entire medium of expression." *See City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994). Rather, it prohibits a single method of communication: autodialed, prerecorded calls to people who have not consented to receive those calls. The restriction is therefore narrowly tailored. Finally, the TCPA leaves open alternative channels for communication.

Courts have universally upheld the TCPA as a content-neutral, constitutional time, place, or manner restriction. *See, e.g., Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 304 (7th Cir. 2017) (analyzing Indiana's virtually identical Robo call law and collecting cases finding the

TCPA constitutional); *Gomez v. Campbell Ewald Co.*, 768 F.3d 871 (9th Cir. 2014), *aff'd on other grounds,* 136 S. Ct. 663 (Jan. 20, 2016)*; Mainstream Mktg. Servs., Inc. v. FTC*, 358 F.3d 1228 (10th Cir. 2004) (do-not-call registry and EBR exemption of the TCPA constitutional); *Missouri ex rel. Nixon v. Am. Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003) (limits on unsolicited faxes constitutional); *Moser,* 46 F.3d at 973.[1]

In fact, the Supreme Court issued several opinions on the TCPA during that time period and never once questioned its constitutionality, including *Mims*, 565 U.S. at 375, and *Gomez, supra*, where the court affirmed after the Ninth Circuit explicitly found the TCPA constitutional. Notably, *Gomez* was decided ***the year after*** *Reed*, 135 S. Ct. 2218, relied upon by the Defendant as its basis for the TCPA's unconstitutionality. In *Reed*, the court explained that "[a] law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Id.* at 2222 (citation omitted). *Reed* concerned a law that banned outdoor signs without a permit, and created 23 exemptions for specific types of signage, placing varying restrictions on the signage depending on which exemption it fell into. *Id.* at 2221. For example, the law exempted "ideological signs" or "political signs" from the outright ban. *Id.* The plaintiffs, a local church, challenged the law after the Town of Gilbert repeatedly cited them for failure to comply with the requirements imposed by the "Temporary Directional Signs Relating to a Qualifying Event" exemption. *Id.* at 2221-22. These circumstances are not consistent with the TCPA's content-neutral laws.

---

[1] *See also De Los Santos v. Millward Brown, Inc.*, No. 13-80670-CV-MARRA, 2014 U.S. Dist. LEXIS 88711, at *11-18 (S.D. Fla. June 29, 2014); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380 (N.D. Ga. 2013); *Strickler v. Bijora, Inc.*, No. 11 CV 3468, 2012 U.S. Dist. LEXIS 156830, at *16-20 (N.D. Ill. 2012).

**B. <u>The Federal Government's Sovereign Immunity from the TCPA Does Not Render the Statute a Content-Based Abridgment of Speech.</u>**

HomeAdvisor also argues that the TCPA is unconstitutional under the Equal Protection Clause because it favors the content of government speech over private speech. To the extent that the TCPA "favors" government speech at all, it is because the federal government has sovereign immunity from the TCPA, not because Congress sought to privilege the *content* of government speech. In *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016), the Supreme Court held that "the United States and its agencies, it is undisputed, are not subject to the TCPA's prohibitions *because no statute lifts their immunity*." *Id.* at 672 (emphasis added); *id.* (referring to "the sovereign's" immunity as "absolute.") As *Mejia v. Time Warner Cable, Inc*., No. 15-CV-6445 (JPO), 2017 U.S. Dist. LEXIS 120445, at *43-44 (S.D.N.Y. Aug. 1, 2017) held examining this argument following *Reed* in the TCPA context have arrived at the same conclusion:

> The Court rejects, however, Time Warner's argument that the provision imposes a speaker-based distinction by exempting government speakers from liability. The Supreme Court has held that the "United States and its agencies … are not subject to the TCPA's prohibitions because no statute lifts their immunity." *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 672, 193 L. Ed. 2d 571 (2016). But the mere absence of liability for government speakers does not raise a First Amendment problem. First government speech is exempt from First Amendment scrutiny. *See Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 467-68, 129 S. Ct. 1125, 172 L. Ed. 2d 853 (2009). And second, the absence of TCPA liability for government speakers is only a confirmation of the general principle of sovereign immunity. To find otherwise would force Congress into an untenable Sophie's Choice between sovereign immunity and compliance with the First Amendment by requiring Congress to abrogate sovereign immunity every time it sought to restrict private speech, so as to avoid the restriction's being treated as speaker based.

Finally, it is perfectly permissible for the federal government to favor its own speech. "The government is free to establish venues for the exclusive expression of its own viewpoint….

It would be strange indeed to hold that the government may not favor its own expression[.]" *Oberwetter v. Hilliard*, 639 F.3d 545, 554 (D.C. Cir. 2011).

**C. The TCPA is Not Unconstitutionally Vague.**

HomeAdvisor's facial challenge to the TCPA based on vagueness also fails. The TCPA, including specifically 47 U.S.C. § 227(b)(1)(A)(iii), is not unconstitutionally vague, regardless of whether courts have varied in their interpretations of the term automatic telephone dialing system since the D.C. Circuit's *ACA Int'l v. FCC,* 885 F.3d 687 (D.C. Cir. 2018) opinion.[2]

> The vagueness doctrine states that "a statute which either forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." A court may impute to persons of common intelligence certain extrinsic knowledge, such as any limiting statutory construction adopted by a court or enforcement agency, general and specialized knowledge regarding the definition of words, and knowledge of legislative history. Consequently, the TCPA must be clear to persons of common intelligence when viewed in light of this extrinsic knowledge.

*Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns, L.P.*, 329 F. Supp. 2d 789, 804 (M.D. La. 2004) (denying various vagueness challenges to the TCPA).

With regard to the term autodialer, when viewed in the light of limiting statutory constructions adopted by courts and the FCC, general and specialized knowledge regarding the definition of words, and knowledge of legislative history, the TCPA is clear to persons of common intelligence. Although not addressing a vagueness challenge, this was in effect the conclusion reached earlier this year by another court interpreting the term autodialer, in concluding that the equipment likely used by HomeAdvisor to call Plaintiff would constitute an autodialer:

[2] HomeAdvisor challenges federal courts' varying interpretations of the term autodialer post-*ACA Int'l* by way of its motion to stay pending an FCC ruling. *See* ECF 18.

The dispute in this case centers on "[a] basic question raised by" that definition: "whether a device must *itself* have the ability to generate random or sequential telephone numbers to be dialed" or whether "it [is] enough" that "the device can call from a database of telephone numbers generated elsewhere." *ACA Int'l*, 885 F.3d at 701….

***

Courts since *ACA Int'l* have split on whether a device must itself be able to generate random or sequential numbers to qualify as an ATDS.

***

[C]ourts, including the Ninth Circuit—the only other circuit to have addressed this issue directly—have reached a different conclusion: that a device may qualify as an ATDS if it is incapable of generating random or sequential numbers to be dialed, and even if it is incapable of storing numbers "generated by a random or sequential number generator." *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1050 (9th Cir. 2018). In other words, the Ninth Circuit held in *Marks* that "a device can be an ATDS if it merely dials numbers from a stored list." *Id.*

***

Although not an obvious decision, the Court concludes that the understanding of the statute put forward in *Marks* is correct. In addition to the reasons provided by *Marks*, that conclusion is supported by the desire to avoid an anomaly that arises from the alternate reading of the statute. Under the alternate reading, the phrase "using a random or sequential number generator" applies to both "store" and "produce." Applying the phrase to both words creates the following definitions for an ATDS: (1) "equipment which has the capacity to *store* … telephone numbers to be called [] using a random or sequential number generator" and (2) "equipment which has the capacity to *produce* … telephone numbers to be called [] using a random or sequential number generator." The second of those two definitions makes perfect sense; it is easy to imagine an ATDS that produces numbers using a number generator. The first definition, however, does not, because it is unclear how an ATDS—or indeed anything—could "store" numbers "using" a number generator.

Courts that follow the alternate reading address that anomaly by finding that the use of the verb "store" ensures that "a system that generated random numbers and did not dial them immediately, but instead stored them for later automatic dialing" would still qualify as an ATDS. *Johnson v. Yahoo!, Inc.*, 346 F. Supp. 3d 1159, 1162, n.4 (N.D. Ill. Nov. 29, 2018). Such a system, however, would also be covered by the reading of the statute in *Marks*—in other words, such a system

> would still qualify as equipment that has the capacity to *produce* numbers using a number generator. Accordingly, under that interpretation of the statute, the word "store" serves no purpose, and is rendered superfluous. Because it is a "cardinal principle" that courts "must give effect, if possible, to every clause and word of a statute," such a result weighs in favor of the *Marks* reading of the TCPA. *Williams v. Taylor*, 529 U.S. 362, 404, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).
>
> In summary, the TCPA is an unusually confusing statute. But considering the statute as it is written, the Court concludes that the phrase "using a random or sequential number generator" modifies only the verb "produce" and not the verb "store." Therefore, to qualify as an ATDS under the TCPA, a device need only have the capacity to do one of the following: either (1) "store … telephone numbers to be called" and "dial such numbers," *or* (2) "produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers."

*Gonzalez v. Hosopo Corp.*, 371 F. Supp. 3d 26, 29-34 (D. Mass. 2019).

Ultimately, a statute is not vague simply because various courts have interpreted one of its terms differently. "A (perhaps the) central role of courts is to interpret the law when the language itself could yield multiple reasonable meanings." *Dalack v. Vill. of Tequesta*, 434 F. Supp. 2d 1336, 1347 (S.D. Fla. 2006). This is particularly true here, where the only interpretation of the term ATDS that could be favorable to HomeAdvisor would render superfluous the word "store" in the TCPA's definition of ATDS. Accordingly, disagreement over the meaning of the term ATDS does not make the TCPA vague and unconstitutional.

**D. <u>The Putative Class is Certifiable and Should Not Be Stricken</u>**

"A motion to strike is a drastic remedy and is disfavored by the courts." *Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD-KMT, 2013 U.S. Dist. LEXIS 140691, at *6 (D. Colo. Sept. 27, 2013). In fact, as Judge Kane held, "to prevail on a motion to strike class allegations, a defendant 'must demonstrate from the face of plaintiffs' complaint that it will be impossible to certify the classes alleged by the plaintiffs regardless of the facts the plaintiffs

may be able to prove.'" *Francis v. Mead Johnson & Co.*, No. 10-cv-00701-JLK, 2010 U.S. Dist. LEXIS 105887, 2010 WL 3733023 (D. Colo. Sept. 16, 2010). Judge Brimmer similarly has stated "the Court will grant defendants' motion only if they are able to show conclusively that plaintiffs will be unable to establish facts that would make class treatment appropriate." *Wornicki v. Brokerpriceopinion.com, Inc.*, No. 13-cv-03258-PAB-KMT, 2015 U.S. Dist. LEXIS 36985, at *12 (D. Colo. Mar. 23, 2015). As TCPA cases have been routinely certified around the country for unsolicited cold calls, no such circumstances exist here.

District courts and appellate courts in other circuits have agreed on this standard in the context of TCPA cases. *See Bais Yaakov of Spring Valley v. ACT, Inc.,* 328 F.R.D. 6 (D. Mass. 2018) (denying motion to strike class allegations in TCPA case); *see also Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93-95 n.30 (3d Cir. 2011) (holding that a court may deny class certification before discovery only if the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met," and explaining that "in the specific context of claims filed under the TCPA statute, it is difficult to resolve without discovery whether there are factual issues regarding class members' business relationships with defendants or whether they consented"); *Bridging Cmtys. Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1126 (6th Cir. 2016) (holding in a TCPA case that "the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)" and that "allowing such speculation to dictate the outcome of a class-certification decision would afford litigants in future cases wide latitude to inject frivolous issues to bolster or undermine a finding of predominance.").

HomeAdvisor's motion focuses on one potential defense to the claims Plaintiff seeks to represent to assert that the action in its entirety is incapable of being maintained as a class action.

In support of HomeAdvisor's sweeping conclusion that certification is impossible and that class allegations should be stricken, it simply argues that express consent is often an issue in TCPA cases and cites several class certification decisions addressing the affirmative defense of prior express consent. HomeAdvisor's argument ignores Plaintiff's allegations regarding Defendant's actions which apply to all class members, including, most importantly, the "cold call" nature of the campaign. The cases cited by Defendant are inapplicable to the facts alleged in and current procedural posture of this case. Indeed, many of the cases cited by the Defendant came *after* discovery and when a motion for class certification was supported and filed. *See, e.g., Warnick v. Dish Network LLC*, 301 F.R.D. 551 (D. Colo. 2014) (cited by Defendant at ECF No. 17, p. 13).

Nothing is facially defective regarding the Plaintiff's complaint, unlike in *Edwards v. Zenimax Media, Inc.,* No. 12-cv-00411-WYD-KLM, 2012 U.S. Dist. LEXIS 137520 (D. Colo. Sept. 25, 2012), cited by HomeAdvisor. In *Edwards*, the putative class definition was struck at the pleading stage because they were the same claims that had just been rejected in another court. *Id.* at *10-11 ("Given that the complaints and the class definitions in particular are substantially similar, I find the opinion in *Walewski* to be highly persuasive and relevant to the resolution of the Motion to Strike in this matter."). If HomeAdvisor carries their burden that the calls were made with prior express written consent, something that the Plaintiff's Complaint specifically avers to the contrary, such arguments can be appropriately addressed at the class certification stage.

HomeAdvisor acknowledges this while attempting to grasp at straws by asserting that the Plaintiff does not allege any facts to support the fact that the Defendant engaged in a "cold

calling" campaign. ECF No. 17 at p. 13. However, the Plaintiff's complaint asserts that "Mr. Newell and putative class members never consented to receive these calls. Because telemarketing campaigns generally place calls to hundreds of thousands or even millions of potential customers *en masse*, Mr. Newell brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of HomeAdvisor." *See* ECF No. 1 at ¶ 3.

Another court recently facing a substantively identical argument denied such a motion in a TCPA case that, unlike here, involved a TCPA claim as to which consent was a valid defense:

> Defendant argues that the class definitions are facially uncertifiable because the complaint fails to allege acts that apply generally to the class and therefore, common issues of fact cannot predominate. Defendant contends that the individual issues predominate across the putative classes because Plaintiffs base their class definitions on issues of consent that will vary between class members. But this argument is premature.
>
> ***
>
> The district judge to whom this case is assigned has previously stated that dismissal of class allegations at the pleading stage is "extreme" and "is only available where the face of the pleadings reveal that class certification will be impossible." *Sullivan v. Gov't Employees Ins. Co.*, 6:17-cv-1755-Orl-40KRS, 2018 U.S. Dist. LEXIS 219633, 2018 WL 4759905, at *2 (M.D. Fla. Aug. 1, 2018) (citing *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012). *See also Romano v. Motorola, Inc.*, No. 07-civ-60517, 2007 U.S. Dist. LEXIS 86472, 2017 WL 4199781, at *2 (S.D. Fla. Nov. 26, 2007). The motion is also **DENIED** because Defendant has not met this high standard.

*Wright v. EXP Realty, LLC*, No. 6:18-cv-1851-Orl-40TBS, 2019 U.S. Dist. LEXIS 99003, at *5-7 (M.D. Fla. June 13, 2019). Similarly here, the Complaint sets forth all elements necessary to maintain this putative class action pursuant to the requirements of Federal Rule of Civil Procedure 23(a) and (b). *See* ECF No. 1 at ¶¶ 41-52. The Complaint specifically alleges that HomeAdvisor made automated calls to the cellular telephones of consumers, including to

numbers listed on the National Do Not Call registry. *See id.* at ¶¶ 2, 23. Inherent in this method of cold-calling is the lack of prior express written consent. As alleged in the Complaint, this marketing scheme applies generally to the classes and common questions of law and fact predominate, including as to consent. *See id.* at ¶ 47.

Moreover, even if the Court were to find the proposed class overbroad, the appropriate remedy would be to simply refine the class definition—not strike the class allegations entirely. Crafting the class definition does not involve or require exacting precision. *See Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. Ill. 2012) ("Defining a class so as to avoid, on one hand, being overinclusive and, on the other hand, the fail-safe problem is more of an art than a science."). As such, even if the Court were to find that the purported class is overbroad, the correct remedy is not a denial of class certification or dismissal. *See id.*; *see also Campbell v. First Am. Title Ins. Co.*, 269 F.R.D. 68, 73-74 (D. Me. 2010) (court revised class definition to correct problem). For this reason, if the Court were so inclined to object to the Plaintiff's class definition that serves as the basis for the Defendant's motion, the solution is to correct the deficiency. Here, while the Plaintiff does not believe that his class definition needs to include such language, the class definition could be altered to affirmatively plead out consent.

Indeed, the Plaintiff made a conscious decision to not include language about individuals who have not provided their "prior express written consent" in the class definition, as other federal courts have found that to be an impermissible "Fail-Safe" class. In *Sauter v. CVS Pharmacy, Inc.*, No. 2:13-cv-846, 2014 U.S. Dist. LEXIS 63122, at *23-24 (S.D. Ohio May 7, 2014), the court held that a TCPA plaintiff needed to amend his class definition because he included that language in a TCPA proposed class definition:

> Each of the Plaintiff's proposed classes is defined to include only those individuals who did not expressly consent to the receipt of the defendant's phone calls made with the use of an ATDS. Because the TCPA prohibits calls to cellular telephones using ATDSs unless prior express consent has been given, defining the class to include anyone who received such a call without prior express consent means that only those potential members who would prevail on this liability issue would be members of the class. … In other words, "the proposed class[es] consist[] solely of persons who can establish that defendant violated the TCPA." *Lindsay Transmission, LLC*, 2013 U.S. Dist. LEXIS 9554, 2013 WL 275568, at *4. If the Plaintiff successfully demonstrates that the Defendant made calls using an ATDS or an artificial or prerecorded voice to the class members' cell phones without the class members' prior express consent, then the class members win. *See* 47 U.S.C. § 227(b)(1)(A)(iii). However, if the Plaintiffs are unsuccessful in meeting their burden of proof, the class does not exist and the class is not bound by the judgment in favor of the Defendant. This is the definition of a prohibited fail-safe class.

Other courts agree. *See, e.g., Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536 (E.D. Mich. 2015); *Olney v. Job.Com, Inc.*, No. 1:12-CV-01724-LJO-SKO, 2013 U.S. Dist. LEXIS 141339 (E.D. Cal. Sep. 30, 2013). Here, the Plaintiff made a conscious decision to not include such language to avoid that issue.

Finally, while HomeAdvisor cites a single case declining to certify a class based on the phrase "automatic telephone dialing system," numerous other courts have used this phrase at the pleading stage to have a case proceed with discovery.[3] HomeAdvisor's position also ignores the fact that the Plaintiff's class includes calls made with a "pre-recorded voice."

## III. CONCLUSION

The Court should therefore deny HomeAdvisor's motion.

---

[3] *See Whitehead v. Ocwen Loan Servicing, LLC*, No. 2:18-cv-470-FtM-99MRM, 2018 U.S. Dist. LEXIS 182386, at *11 (M.D. Fla. Oct. 24, 2018); *Zeidel v. Nat'l Gas & Elec., Ltd. Liab. Co.*, No. 18 CV 06792, 2019 U.S. Dist. LEXIS 83988, at *8-9 (N.D. Ill. May 17, 2019); *Shelton v. Nat'l Gas & Elec., LLC*, No. 17-4063, 2019 U.S. Dist. LEXIS 59235, at *32-34 (E.D. Pa. Apr. 5, 2019); *Wilson v. Quest Diagnostics Inc.*, No. 2:18-11960, 2018 U.S. Dist. LEXIS 212023, at *8-11 (D.N.J. Dec. 10, 2018).

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy
Jonathan P. Misny
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         misny@mmmb.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: 508.221.1510
E-mail: anthony@paronichlaw.com

*Counsel for Plaintiff*