**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-2392

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,

      Plaintiff,

v.

HOMEADVISOR, INC.,

      Defendant.

---

**DEFENDANT HOMEADVISOR, INC.'S REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS**

---

## INTRODUCTION

Plaintiff Jourey Newell, a serial filer of TCPA class actions, does not—and cannot—dispute that the law regarding what constitutes an automatic telephone dialing system ("ATDS") under the Telephone Consumer Protection Act ("TCPA") is in disarray.  Nor does Plaintiff dispute that Congress has delegated authority to the Federal Communications Commission ("FCC") to determine what falls within the ambit of an ATDS, and the FCC is currently in the process of doing so, with the public comment period now closed and a ruling forthcoming.[1]  Thus, contrary to Plaintiff's characterization of HomeAdvisor's request for a stay as one "pending a hypothetical

---

[1] HomeAdvisor seeks to stay this action pending the resolution of the FCC's Public Notice DA 18-493, CG Docket Nos. 18-152, 02-278 (the "Public Notice").  Indeed, the Stopping Bad Robocalls Act, H.R. 3375, would require the FCC to rule within 6 months on the pending Public Notice.

FCC order," an order from the FCC clarifying what constitutes an ATDS is not merely a "hypothetical" possibility—it is a real, forthcoming event.

Ignoring the factors warranting a stay under the primary jurisdiction doctrine, Plaintiff asks this Court to press ahead and determine what constitutes an ATDS on its own.  However, to make such an interpretation, the Court will have to wade into the policy arena and make a policy decision that was entrusted, in the first instance, to the FCC for consideration and determination.  The FCC's ruling will indisputably provide guidance and promote uniformity on this unsettled issue, and it is within the FCC's province to issue that ruling before this Court (or others) engage in their own (potentially contradictory) interpretive efforts.

Moreover, while Plaintiff contends that a stay would be contrary to judicial efficiency and prejudicial due to its speculated length, he overlooks the fact that the primary jurisdiction doctrine does not consider delay.  Instead, the doctrine exists to protect separation-of-powers concerns.  Moreover, it is inefficient for the Court and the parties to proceed with this action in the face of the pending Public Notice.  With the issue of what constitutes an ATDS now squarely before the FCC, there is a significant risk that this Court could reach a determination that is inconsistent with the FCC's ultimate decision.  Absent a stay, the FCC's ruling will mean that the parties and the Court will have to revisit issues, engage in renewed briefing, or hold additional hearings; the parties and the Court will have wasted precious resources only to have their prior efforts negated.  On the other hand, a short stay will allow the FCC to address this critical issue, will not prejudice any of the parties, and will, in fact, avoid significant prejudice and waste of resources.

Finally, Plaintiff's Opposition resorts to mischaracterizing the facts giving rise to this action.  Indeed, Plaintiff claims to be a consumer who received unwanted telemarketing calls from

HomeAdvisor.  In fact, Plaintiff holds himself out as a service professional, and Plaintiff was contacted by HomeAdvisor at the business number on his company website to join HomeAdvisor's network of service providers.  HomeAdvisor does not engage in unsolicited telemarketing of consumers.

## ARGUMENT

### I.     A Stay Is Warranted Under The Primary Jurisdiction Doctrine.

Plaintiff does not dispute that this Court has the power to stay this matter under the doctrine of primary jurisdiction.  Plaintiff also does not dispute that in invoking the primary jurisdiction doctrine, courts in the Tenth Circuit consider "whether the issues of fact in a case: (1) are not within the conventional experience of judges; (2) require the exercise of administrative discretion; or (3) require uniformity and consistency in the regulation of the business entrusted to a particular agency." *Crystal Clear Commc'ns, Inc. v. Sw. Bell Tel. Co.*, 415 F.3d 1171, 1179 (10th Cir. 2005) (citations omitted).  Instead, Plaintiff argues that the FCC already addressed whether a predictive dialer constitutes an ATDS, and he also asserts that the Court can interpret the statutory definition of an ATDS on its own.  Plaintiff is wrong on both fronts.

### A.     The Definition Of What Constitutes An ATDS Is Unsettled And Pending Before The FCC.

Seeking to minimize the impact of the pending Public Notice proceeding on this action, Plaintiff's Opposition incorrectly casts HomeAdvisor's requested stay as one that is premised upon "it's [sic] wish" that "the FCC rules (who knows when) that predictive dialers are no longer covered by the statute." (ECF 21, at p. 10). That is simply not the case.

As set forth in HomeAdvisor's Motion, the case law regarding what constitutes an ATDS is in disarray following *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018), with courts split on a

host of issues, including whether the FCC's prior 2003 and 2008 predictive dialer rulings remain good law. Thus, contrary to Plaintiff's contention, predictive dialers do not *per se* qualify as an ATDS under the statute. Indeed, as a number of courts have held and as HomeAdvisor contends, the 2003 and 2008 predictive dialer rulings were vacated by *ACA International*. *See, e.g., Marks v. Crunch San Diego, LLC*, 904 F.3d 1040, 1050 (9th Cir. 2018); *Pinkus v. Sirius XM Radio, Inc.*, 319 F. Supp. 3d 927, 935 (N.D. Ill. 2018); *Gonzalez v. Ocwen Loan Servicing, LLC,* No. 5:18-cv-340-Oc-30PRL, 2018 U.S. Dist. LEXIS 153480, at *14 (M.D. Fla. Sept. 5, 2018). And while some courts have previously concluded otherwise, a district court recently rejected the report and recommendation of a magistrate judge finding that the 2003 and 2008 predictive dialer rulings remained good law. *Denova v. Ocwen Loan Servicing,* No. 8:17-cv-2204-T-23AAS, 2019 U.S. Dist. LEXIS 163014, at *6-*7 (M.D. Fla. Sept. 24, 2019).

Thus, it is Plaintiff who is hoping for a change in the law, not HomeAdvisor. However, the point remains that rather than wade into the myriad of divergent authority that has resulted following *ACA International*, under the primary jurisdiction doctrine this Court should wait for the FCC to resolve these issues in the first instance.

### B.     A Stay Favors The Deference That Should Be Afforded to The FCC Under Each Of The Primary Jurisdiction Factors.

Plaintiff's next argument— that "the Court can interpret the statutory definition of ATDS on its own" (ECF 21, at p. 5-7)—simply ignores the purpose of the primary jurisdiction doctrine.

There is no dispute that this Court can interpret a statutory phrase for itself. But it should not always do so in light of broader policy concerns, and the primary jurisdiction doctrine provides the framework for assessing when a court should yield to those concerns. The relevant question is not whether the court *could* interpret what constitutes an ATDS on its own, but whether giving

the FCC the opportunity to do so in the first instance furthers the interests of the TCPA and provides uniformity of decision with respect to a matter that is entrusted to the FCC.

Congress has expressly delegated to the FCC the responsibility to promulgate regulations implementing the TCPA.  47 U.S.C. § 227 (b)(2) ("The Commission shall prescribe regulations to implement the requirements of this subsection.").  Determining what constitutes an ATDS is not a matter of interpreting a statute that is otherwise clear in its meaning.  Instead, as courts within the Tenth Circuit have recognized, it requires the FCC to effectuate policy determinations regarding the functionalities required for a device to constitute an ATDS which inherently will govern the ultimate reach of the statute.  *Higgenbotham v. Diversified Consultants, Inc.*, No. 13-2624-JTM, 2014 U.S. Dist. LEXIS 65915, at *9 (D. Kan. May 14, 2014) (concluding that determining the meaning of "capacity" as used in the TCPA's ATDS definition requires deference to the FCC under the primary jurisdiction doctrine because "[t]he seminal question of [the TCPA's] reach is a technical one, which falls in the ambit of the FCC's administrative expertise" and how the FCC ultimately resolves the question "is a matter of administrative discretion").  These types of policy determinations are best made by the FCC in the first instance, which is not constrained to only reviewing the facts and circumstances immediately before it as a court is.  *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 569 (1980) (recognizing that where an issue requires striking a balance between competing considerations "[a]dministrative agencies are simply better suited than courts to engage in such a process").

And while Plaintiff asserts that "[i]t is irrelevant that district courts have varied their approaches to determining and their conclusions regarding what constitutes an ATDS" (ECF 21, at p. 5-6), that is simply not so under the primary jurisdiction doctrine.  The myriad of conflicting

authorities on the issue of what constitutes an ATDS *highlights* the need for deference to the FCC's

pending Public Notice, which will directly address this issue.  Indeed, as a result of the conflicting

case law, Defendant is unable to determine with certainty what constitutes an ATDS, which

renders compliance efforts impossible, promotes forum shopping by plaintiffs and makes the need

for clarity from the FCC to bring uniformity to the administration of the TCPA compelling.[2]

     **C.**     **Judicial Efficiency And Delay Are Not Factors Considered In Evaluating Primary Jurisdiction As Plaintiff Suggests.**

Plaintiff devotes the majority of his Opposition to asserting that a stay on primary

jurisdiction grounds would not promote judicial efficiency due to its speculated length.  (ECF 21,

at p. 4-5, 7-10).  However, the primary jurisdiction doctrine serves prudential needs that transcend

the wants, hopes, and desires of individual litigants in individual cases.  *See Charvat v. EchoStar*

*Satellite, LLC*, 630 F.3d 459, 466 (6th Cir. 2010).  As a result, the potential length of a stay is not

a factor considered in a primary jurisdiction analysis.  *Crystal Clear Commc'ns*, 415 F.3d at 1179.

Indeed, courts within and outside of the Tenth Circuit have rejected identical arguments.

For example, in *Cox Okla. Telecom, LLC v. Corp. Comm'n*, the Court denied a motion to vacate a

primary jurisdiction stay pending an FCC declaratory ruling notwithstanding the fact that it had

been more than two years since the stay was entered, explaining:

> Whenever a case is stayed on the basis of primary jurisdiction, the judicial process is suspended pending referral of such issues to the administrative body for its views. [Citations].  Thus, simply due to the nature of stays entered on the basis of primary jurisdiction and due to the purpose behind the doctrine of

---

[2] As pointed out in HomeAdvisor's Motion, Plaintiff who is a resident of Pennsylvania (ECF 1, ¶ 5) quite purposefully has brought this action in the District of Colorado, thus avoiding the Third Circuit's decision in *Dominguez v. Yahoo, Inc.*, which held that random or sequential number generation is required to fit within the statutory definition of an ATDS.  894 F.3d 116, 121 (3d. Cir. 2018).

> primary jurisdiction, the Court finds that stays on this basis often are of indefinite length and are not inherently unlawful.

No. CIV-04-1282-M, 2007 U.S. Dist. LEXIS 20692, at *7 (W.D. Okla. Mar. 22, 2007).   In declining to vacate, the Court found that "the length of time the stay has been, and likely will continue to be, in effect does not warrant vacating the stay at this time" because "[a]ll of the reasons which justified granting the stay in January, 2005 are still just as applicable today . . . ." *Id.* at *7. Other courts have similarly rejected assertions that the length of a stay is determinative in a primary jurisdiction analysis. *Barrera v. Comcast Holdings Corp.*, No. 14-cv-00343-TEH, 2014 U.S. Dist. LEXIS 65800, at *12 (N.D. Cal. May 12, 2014) (rejecting Plaintiff's assertion that a primary jurisdiction stay was unwarranted due to the potential delay in the FCC ruling on pending petitions because "[i]ssuing a decision in the interim that may be undermined by an anticipated ruling of the FCC would run counter to the policy animating the primary jurisdiction doctrine itself."); *Levi v. Comcast Holdings Corp.*, No. 13-cv-05604-JD, 2014 U.S. Dist. LEXIS 198299, at *7 (N.D. Cal. June 2, 2014) ("the potential for delay alone is not enough to counsel against a stay where the FCC proceeding at issue is likely to be highly relevant to this case.").

Lacking authority to support his assertion that judicial efficiency and delay warrant the denial of a stay of primary jurisdiction grounds, Plaintiff's Opposition resorts to mischaracterizing the case law on this point.  For example, while Plaintiff cites *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) for the proposition that a court may consider "efficiency" in determining whether to stay a matter on primary jurisdiction grounds, significantly the court in *Astiana* explained that "efficiency" counsels against a stay where an "agency is aware of but has expressed no interest in the subject matter of the litigation" or where "a referral to the agency

would significantly postpone a ruling that a court is otherwise competent to make." *Id.* at 761. Neither of those circumstances is present here.

Similarly, Plaintiff's citation to *Reiter v. Cooper*, 507 U.S. 258 (1993) is inapposite. Insofar as *Reiter* addressed delay to allow an agency to make a determination on an issue, it held "the equities" favor entry of judgment on a claim separate from a counterclaim referred to an agency because, among other reasons, waiting for resolution of the counterclaim "could produce substantial delay" that was not necessary for resolution of the claim. *Id.* at 270. *Reiter* did not hold that delay vitiated against an appropriate referral of the counterclaim.

Plaintiff's remaining authority on this point is equally unavailing because in denying stays on primary jurisdiction grounds, the courts concluded that agency action was not needed to resolve the issues before them. For example, in *Jordan v. Nationstar Mortg., LLC*, a pre-*ACA International* case, the court declined to stay a matter pending the FCC's action on petitions pending before regarding the definition of "capacity" concluding that "[i]t is not clear that rulings on the petitions would be determinative to this case because the questions presented in the petitions appear different from the issues presented here." Case No. 14-cv-00787-WHO, 2014 U.S. Dist. LEXIS 148844, at *3 (N.D. Cal. Oct. 20, 2014). Similarly, in *Nat'l Commc'ns Ass'n v. AT&T*, the court found that there was no issue requiring agency expertise or a danger of inconsistencies because the tariff statute at issue was clear and unambiguous, leaving the court to simply apply the statute to the facts before it. 46 F.3d 220, 225 (2d. Cir. 1995).

Finally, Plaintiff's citation to a string of authorities denying *Landis* stays pending the D.C. Circuit's decision in *ACA International* are unavailing given that each of these cases does not address a primary jurisdiction stay and in many instances involved claims alleging the use of both

an ATDS and a pre-recorded voice.[3] *Petras v. Ocwen Loan Servicing, LLC*, No. 5:17-cv-73-Oc-30PRL, 2017 U.S. Dist. LEXIS 85372, at * 4 (M.D. Fla. June 5, 2017) (denying *Landis* stay pending *ACA International* where Plaintiff alleged use of an ATDS or pre-recorded voice); *Silwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FtM-29MRM, 2016 U.S. Dist. LEXIS 93852, at *10 (M.D. Fla. July 19, 2016) (same); *Yardley v. Ocwen Loan Servicing, LLC*, No. 8:16-cv-1385-T-30AEP, 2017 U.S. Dist. LEXIS 86798, at *4 (M.D. Fla. Mar. 29, 2017) (same); *Terec v. Reg'l Acceptance Corp.*, No. 8:16-cv-2615-T-30MAP, 2017 U.S. Dist. LEXIS 22691, at *4 (M.D. Feb. 17, 2017) (same); *Schwyhart v. Amsher Collections Servs.*, 182 F. Supp. 3d 1239, 1243 (N.D. Ala. 2016) (denying *Landis* stay); *Mancini v. JP Morgan Chase Bank, N.A.*, No. 1:15-cv-61524-UU, 2016 U.S. Dist. LEXIS 193235, at *2 (S.D. Fla. Mar. 28, 2016) (same).

Accordingly, there is no basis to deny the stay sought due to any delay that may occur. Indeed, judicial efficiency favors a stay to allow the FCC to resolve the interpretive issues central to this dispute.

### D.   Plaintiff's Concerns Of An "Indefinite" Stay Are Unwarranted And Irrelevant.

Finally, Plaintiff claims that a stay of these proceedings would effectively be an "indefinite" one (ECF 21, at p. 10).  But the duration of the stay is not a factor under the primary jurisdiction doctrine. And, even if the length of a requested stay were appropriately considered—

---

[3] Plaintiff's reliance on *Watson Ranch Corp. v. Hecla Mining Co.*, No. 07-cv-00267-EWN-MEH, 2007 U.S. Dist. LEXIS 41174 (D. Colo. June 6, 2007), *Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM0NYW, 2017 U.S. Dist. LEXIS 121534 (D. Colo. Aug. 2, 2017), and *Weatherspoon v. Miller*, No. 11-CV-00312-REB-MEH, 2011 U.S. Dist. LEXIS 44210 (D. Colo. Apr. 19, 2011) is also misplaced as each of these cases addressed a motion to stay pending the resolution of a defendant's motion to dismiss.

which it is not—there is no basis for Plaintiff's repeated mischaracterizations of HomeAdvisor's requested stay as "indefinite."

The FCC has made its intent to act clear, and with the deadline for public comment having passed, the issues are now in the FCC's hands. *See Henirichs v. Wells Fargo Bank, N.A.*, No. C-12-05454 WHA, 2014 U.S. Dist. LEXIS 72713, at *4 (N.D. Cal. Apr. 15, 2014) (granting stay after comment period but before rule change based on FCC petitions "dispositive of the very issue presented"). Indeed, counsel for HomeAdvisor expects that the FCC will act on the pending petition within the next six months. *See* https://www.fcc.gov/document/orielly-remarks-aca-intl-washington-insights-conference (last visited October 25, 2019) (Commissioner Michael O'Rielly stressing the need for prompt FCC action on the definition of an ATDS).

Even if the FCC does not issue its ruling within the next six months, a stay of these proceedings need not be for an indefinite duration, as the Court may reconsider the propriety of a stay after a six-month period. Courts have stayed proceedings for a finite period to allow the appropriate agency an opportunity to act without risking indefinite delay. *See, e.g. Reyes v. BCA Fin. Servs., Inc.*, No. 1:16-cv-24077-JG, ECF No. 200 (July 10, 2019); *Secure v. Ultimate Fitness Grp., LLC*, No. 18-20483, 2019 U.S. Dist. LEXIS 45194, at *3 (S.D. Fla. March 18, 2019). Accordingly, if the Court were worried about an "indefinite" stay, it can simply order a six-month stay and reconsider whether to continue the stay at that time.

## **CONCLUSION**

For the reasons set forth in its Motion and herein, HomeAdvisor respectfully requests that the Court grant its Motion to Stay these proceedings pending the FCC's resolution of the Public Notice pursuant to which it will clarify, among other things, the definition of an ATDS.

Dated:  October 31, 2019                    Respectfully submitted,

/s/ *Brent R. Owen*
Brent R. Owen, #45068
David Blake, #25202
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, Colorado  80202
O  303 830 1776
F  303 894 9239
Brent.owen@squirepb.com
David.blake@squirepb.com

Eric J. Troutman
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
O   213 624 2500
F   213 623 4581
eric.troutman@squirepb.com

Amy Brown Doolittle
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC  20037
O  202 457 6000
F   202 457 6315

*Attorneys for Defendant HomeAdvisor, Inc.*