**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-2392

JOUREY NEWELL, individually and on behalf of a class of all persons and entities similarly situated,

    Plaintiff,

v.

HOMEADVISOR, INC.,

    Defendant.

**DEFENDANT HOMEADVISOR, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM AND MOTION TO STRIKE THE CLASS ALLEGATIONS**

Plaintiff's Opposition (ECF No. 24) is more noteworthy for what it does not address than for what it does. His recycled Opposition responds to arguments that were not even made in HomeAdvisor's Motion to Dismiss For Failure to State a Claim and Motion to Strike the Class Allegations (the "Motion") (ECF No. 17).[1] Plaintiff relies on outdated case law, ignoring the recent decisions by the Ninth and Fourth Circuits holding that the TCPA in its current form discriminates based on the content of the speech and does not pass strict scrutiny. *Duguid v. Facebook, Inc.,* 926 F.3d 1146, 1154 (9th Cir. 2019), *certiorari petition pending,* No. 19-511 (U.S. Oct. 17, 2019); *Am. Ass'n of Political Consultants, Inc. v. FCC,* 923 F.3d 159 (4th Cir. 2019) (hereinafter "*AAPC*"). Likewise, the Opposition ignores HomeAdvisor's argument that the TCPA

---

[1] Plaintiff devotes a page of his Opposition (at p. 7) to refuting an argument regarding the Equal Protection Clause that HomeAdvisor did not even make.

cannot be saved by severing one content-specific exemption, as excising an exemption to expand a statute restricting speech runs contrary to basic First Amendment tenets. *See* Motion at 7-8. Regardless, the other FCC exemptions cannot be severed, so there is no way to rewrite the TCPA to square with the First Amendment.

And with respect to HomeAdvisor's challenge that the TCPA is unconstitutionally vague, Plaintiff bases his argument on a case that admittedly did "not address a vagueness challenge" (Opp. at 8-10), and more significantly, actually confirms that the TCPA is unconstitutionally vague, noting that "the TCPA is an unusually confusing statute." *Gonzalez v. Hosopo Corp.,* 371 F. Supp. 3d 26, 34 (D. Mass. 2019). Indeed, the overbroad and hopelessly vague ATDS formulation does not give HomeAdvisor adequate advance notice of what technology and what speech is (and is not) permissible.

As to the request to strike the class allegations, HomeAdvisor pointed out in its Motion that Plaintiff's proposed class cannot be certified regardless of any discovery in the case because (1) it fails to take into account consent to receive the challenged calls; and (2) defines the class based upon one of the elements in the statute. "[I]t is proper for a court to strike class allegations when the proposed class definition is overbroad," for example, if because "a class includes persons who could not have suffered an injury[.]" *Gilbert v. United States Olympic Comm.*, 2019 WL 1058194, *33 (D. Colo. Mar. 6, 2019) (citing *Edwards v. Zenimax Media, Inc.*, 2012 WL 4378219 (D. Colo. Sept. 25, 2012)), *adopted in pertinent part*, 1:18-cv-00981-CMA-MEH, ECF No. 266, pp. 70 (D. Colo. Sept. 27, 2019).

Because the Complaint does not allow for any plausible determination that *every* call HomeAdvisor made in the last four years promoting its services was made without consent, the

class is overbroad and can never be certified. Plaintiff does not dispute that his class definition includes HomeAdvisor's customers, who consented to receive the challenged calls. *See* Motion at 13 n.6. He claims, however, that he can "simply redefine the class definition" (Opp. at 14) at some later point; but the time to do so is now—before putting HomeAdvisor through the time and expense of discovery related to a class that can never be certified.

Finally, while Plaintiff recognizes that "fail-safe" classes—classes that are defined so that whether a person qualifies as a member depends on whether that person has a valid claim—are improper, he nonetheless proceeds to try to define his class based on whether an ATDS was used. Not surprisingly, none of the cases he relies on holds that a court can certify a class when to do so will require the court to resolve the disputed question of whether a class member was called with an ATDS.

HomeAdvisor's Motion should be granted, and the Complaint dismissed, or alternatively, the Court should strike the class allegations.

## ARGUMENT

### I. The TCPA Is Unconstitutional.

#### A. The TCPA Fails First Amendment Principles As Applied.

##### 1. The TCPA Is A Content-Based Restriction On Speech That Does Not Survive Strict Scrutiny.

Plaintiff argues that the TCPA is content-neutral (and therefore asserts that intermediate scrutiny applies), yet his Opposition fails to even acknowledge, let alone discuss, the government-backed debt collection exemption that was the subject of *Duguid* and *AAPC* and was raised by HomeAdvisor in its Motion, along with other FCC-created exemptions. Motion at 4. The Fourth and Ninth Circuits had little problem concluding that with the addition of the government-backed

debt collection exemption (which was added in 2015), the TCPA is a content-based restriction on speech that is subject to strict scrutiny:

> The debt-collection exception, which adds a purposive element, changes the framework. The TCPA now favors speech "solely to collect a debt owed to or guaranteed by the United States." 47 U.S.C. § 227(b)(1)(A)(iii). Because this section "target[s] speech based on its communicative content," the exception is content-based and subject to strict scrutiny. *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2226, 192 L. Ed. 2d 236 (2015); *see AAPC*, 923 F.3d at 165-67.

*Duguid*, 926 F.3d at 1153.

The Ninth Circuit recently distinguished the government-backed debt collection exemption from the exemptions to the Indiana analogue to the TCPA. *Duguid,* 926 F.3d at 1155.  The Indiana analogue was discussed and upheld in *Patriotic Veterans, Inc. v. Zoeller,* 845 F.3d 303 (7th Cir. 2017)—a case relied upon by Plaintiff (Opp. at 5-6)—because the challenged exemptions to the Indiana statute were based on the relationship between the caller and the recipient. *Duguid,* 926 F.3d at 1155.  But, as relevant to Plaintiff's claims here, "[t[he text of the TCPA makes clear that the availability of the [government-backed debt collection] exception depends exclusively on the purpose and content of the call.  The relationship between caller and recipient, though not coincidental, does not bear on the exception's applicability." 926 F.3d at 1154.  Thus, the Ninth Circuit concluded that "*Reed* forbids us from imputing motives or sensibilities to Congress where, as here, its plain language is clear, and clearly content-based." *Id.*

Plaintiff does not even try to argue that the TCPA survives strict scrutiny, which is not surprising in light of the Supreme Court's decision in *Reed* and the Ninth and Fourth Circuits' decisions in *Duguid* and *AAPC*. But, even if Plaintiff were correct that the TCPA is content-neutral (it is not) and intermediate scrutiny applies (it does not), as set forth in HomeAdvisor's Motion (at 7), the TCPA does not survive intermediate scrutiny.  *See* Motion at 7.

### 2. The TCPA Must Be Struck Down In Its Entirety; The Appropriate Remedy Is Not Severance.

The Opposition ignores both *Duguid* and *AAPC*, and it ignores HomeAdvisor's argument that the Court cannot remedy the TCPA's unconstitutionality by severing the government-backed debt collection exemption. Instead, Plaintiff argues that the Court should "refuse to invalidate the entire TCPA because of particularized exceptions to the TCPA inapplicable to the litigation in which the challenges arise." Opp. at 1. What Plaintiff misunderstands, however, is that HomeAdvisor is not challenging the constitutionality of the government-backed debt exemption. Rather, it is the TCPA's speech-restricting prohibition that HomeAdvisor challenges as unconstitutional. And, severing the exemption to broaden the speech prohibition turns the First Amendment on its head.

The TCPA is unconstitutional for what it improperly forbids, nor for what it permits. The proper analysis—then—is on whether the *statute* is narrowly tailored to a compelling governmental interest, not on whether the exemption is. In *Reed*, the Supreme Court addressed the Town of Gilbert's "Sign Code," which prohibited the display of outdoor signs in the town, subject to certain exemptions. 135 S. Ct. at 2224. The Court held that the Sign Code was a content-based speech restriction because the Sign Code's exemptions hinged on the content of a particular sign. *Id.* The Court thus applied strict scrutiny to the Sign Code and concluded that the exemptions rendered the Sign Code under inclusive. *Id.* at 2231. Critically, the Court then struck down the entire Sign Code—it did not simply excise the exemptions.

And while it is true that the Supreme Court invalidated the sign code in *Reed* on underinclusiveness grounds—that is hardly the only basis upon which to invalidate a statute under strict scrutiny. *Reed*, 135 S. Ct. at 2231; *Brown v. Entm't Merchs. Ass'n*, 564 U.S. 786, 805 (2011)

5

(restrictions on First Amendment rights must not be overinclusive); *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (government violates the First Amendment by favoring preferred speakers). More to the point—even after focusing on the underinclusiveness of exemptions in *Reed*, the Supreme Court forbade enforcement of the enactment—it did not strike the content-specific exemption or attempt to sever it to convert the statute to a content neutral restriction. *Reed*, 135 S. Ct. at 2232.

*Reed's* invalidation of the entire statute under the First Amendment, rather than excising speech-permitting exceptions, is consistent with the Court's other First Amendment decisions[2], and with the approach taken by a majority of the Courts of Appeals. The Motion highlighted the Third Circuit's decision in *Rappa v. New Castle Cty.,* 18 F.3d 1043 (3d Cir. 1994) (Motion at 7-8). The Eleventh Circuit's decision in *Dimmitt v. Clearwater*, 985 F.2d 1565 (11th Cir. 1993), is also on point. There, the court faced a content-specific exemption in a statute prohibiting communicative conduct. The district court had found that the statute failed strict scrutiny and struck down the exemption, severing it from the rest of the statute. Recognizing that "removing the portion of the [challenged] ordinance that exempts" speech would leave litigants in a worse position—*i.e.* because even more speech is now covered by the statute—the Eleventh Circuit reversed the district court's severance of the content specific exemption and, instead, struck down the entirety of the statutory *restriction* on speech, not just the exemption. *Id.* at 1572.

This is common sense. Consider, for instance, a hypothetical statute forbidding anyone

---

[2] *See, e.g., Brown,* 564 U.S. at 805; *Arkansas Writers' Project, Inc. v. Ragland*, 481 U.S. 221, 234 (1987); *Carey v. Brown*, 447 U.S. 455, 471 (1980); *Police Dep't of Chicago v. Mosley*, 408 U.S. 92, 95 (1972).

from using social media "except to discuss politics." The statute would be subject to strict scrutiny and struck down on First Amendment grounds—but no one would suggest that the proper remedy is to remove the words "except to discuss politics" so as to convert the statute to a content neutral restriction. Rather, the enactment would be unconstitutional for forbidding so much constitutional speech in a manner that favored specific content. The TCPA is no different. Striking the exemption only expands the reach of the enactment to cover more protected speech, and in a way that Congress and the FCC did not intend.

Moreover, even if this Court severs one exemption, the statute remains riddled with content-specific exemptions enacted by the FCC. Motion at 4. As the Court is jurisdictionally barred from considering a collateral challenge to these FCC exemptions (47 U.S.C. § 402(a); 28 U.S.C. § 2342(1)), these exemptions cannot be severed. And as the FCC's content specific exemptions remain intact, the TCPA plainly remains a content-specific restriction on speech, subject to a strict scrutiny standard it cannot survive.

### B. The TCPA Is Unconstitutionally Vague.

Additionally, the TCPA is, indeed, unconstitutionally vague. Plaintiff's own authority confirms it. He urges the Court to follow *Marks v. Crunch San Diego, LLC,* 904 F.3d 1041 (9th Cir. 2018)—yet *Marks* holds the TCPA's ATDS definition to be ambiguous. *Id.* at 1051. The *Gonzalez* case, which Plaintiff cites at length, notes that the TCPA is an "unusually confusing statute" and that *Marks* is "not an obvious decision." 371 F. Supp. 3d at 34. Yes, one could argue that a close reading of the TCPA by a legal professional steeped in rules of statutory construction might make the decision in *Marks* foreseeable—although by no means likely or necessary—but to say a person of "average intelligence" must discern the application of the TCPA's specifically-

defined ATDS definition to include dialers that do *not* randomly or sequentially dial numbers (despite the specific inclusion of that requirement in the statute) is a pure fiction.

Interestingly, Plaintiff does not posit any standard by which the vagueness of a statute may be measured. He argues merely that courts often interpret vague phrases and leaves it at that. Yet that a court might supply a definition in need of refinement in "marginal cases" does not mean that the vagueness doctrine has no impact where—as here—a central statutory definition (and one affecting the right to free speech) is wholly indeterminable except on an ad hoc basis. The void for vagueness doctrine is particularly robust in free speech cases (*see, e.g., Reno v. ACLU,* 521 U.S. 844, 871-72 (1997)), and the *carte blanche* approach to statutory interpretation Plaintiff advocates is at odds with Supreme Court precedent mandating that Americans be well-capable of understanding speech restrictions before such restrictions are enforced.

**II.     The Class Allegations Should Be Stricken.**

Finally, this Court has not hesitated to strike class allegations when a putative class is clearly too broad. Contrary to Plaintiff's discussion of *Edwards* (Opp. at 12), in that case, this Court struck the class allegations because the class would include individuals "who presumably purchased [the product] from anyone, anywhere, at any time regardless of whether he or she was ever injured by or even experienced the alleged Defect." *Edwards*, 2012 WL 4378219 at *5. "[T]he plaintiff bears the burden of advancing a prima facie showing that the class action requirements . . . are satisfied or that discovery is likely to produce substantiation of the class allegations," and a complaint with an obviously "overbroad" class definition fails that test. *Id*. at *6; *see also Gilbert*, 2019 WL 1058194 at *33 (striking alleged "Damages Class" and finding that "[i]f a class is defined so broadly as to include a great number of members who for some reason

could not have been harmed by the defendant's allegedly unlawful conduct, the class is defined too broadly to permit certification"), *adopted* 1:18-cv-00981-CMA-MEH, ECF No. 266, pp. 68-69.

Recognizing the overbreadth of his class definition, Plaintiff argues that his Complaint pleads that HomeAdvisor engaged in a "cold calling" campaign. (Opp. at 12-13). While HomeAdvisor does not concede that a class definition based on a cold-calling campaign would be certifiable, Plaintiff's class definition is not so limited. Rather, Plaintiff's class definition includes *everyone* who received a call from HomeAdvisor promoting its services and simply ignores the issue of consent altogether. (*See* Cplt., ¶ 42.[3])

Plaintiff argues that he can fix his class definition down the road "to affirmatively plead out consent." (Opp. at 14.) But any refinement should take place now. If Plaintiff intends to base his class on cold telemarketing calls, as his Opposition suggests, he should redefine his class definition now. That way, class certification discovery can be appropriately targeted to information that is relevant and proportional.

HomeAdvisor agrees with Plaintiff that a definition based on the absence of "prior express written consent" would be an improper fail-safe class. *See* Opp. at 14. But it is the duty of Plaintiff to define a class with *factual* characteristics that resolve issues of consent "in one stroke." *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Plaintiff has not yet done so, and the Court

---

[3] Plaintiff's reliance on *Ira Holtzman, C.P.A., & Assocs. v. Turza,* 728 F.3d 682 (7th Cir. 2013) (Opp. at 2) is misplaced. *Turza* is a junk fax case where the Defendant obtained all the phone numbers from a single source and the question of whether a given fax was an advertisement was common to all recipients. In TCPA cases like this one, where the source of the phone number and possibility of consent are individualized issues, class certification is highly uncommon. *See, e.g., Gene & Gene LLC v. BioPay LLC,* 541 F.3d 318, 327-29 (5th Cir. 2008).

should not let the overly broad class definition proceed beyond the pleading stage. *Edwards*, 2012 WL 4378219 at *5; *Gilbert*, 2019 WL 1058194 at *33.

Ironically, while Plaintiff correctly recognizes that pleading a class based upon the absence of prior express written consent would be improper, he makes the same error by including the ATDS requirement in his class definition. Whether or not a system is an ATDS is a critical factual determination for the jury. There is, therefore, no way to know whether a class member is in the class until after a merits issue has been resolved. This is a fail-safe class, is *per se* improper, and striking Plaintiff's class allegations now is therefore appropriate.[4]

Finally, Plaintiff cannot save his class definition because it also includes calls with a pre-recorded voice. (Opp. at 15.) Plaintiff does not allege that he received a pre-recorded voice (only that he was called with an ATDS), and therefore, he would not be typical or an adequate representative of any such class. *See Spivak v. Petro-Lewis Corp.,* 118 F.R.D. 504, 509-511 (D. Colo. Dec. 28, 1987) (denying class certification for lack of typicality and adequacy of representation where named plaintiff's claims were different than those of the proposed class).

## CONCLUSION

For the aforementioned reasons and those set forth in its Motion, HomeAdvisor respectfully requests the Court dismiss the Complaint, or alternatively, to strike the class allegations.

---

[4] Plaintiff is critical of HomeAdvisor for citing just one recent on-point case to support its argument. However, none of the four cases Plaintiff cites (Opp. at 15 no.3) even addresses class certification, let alone the issue of whether a class can be certified when inclusion in the class turns on whether an ATDS was used.

Dated:  November 11, 2019 Respectfully submitted,

*/s/ Brent R. Owen*
Brent R. Owen, #45068
David Blake, #25202
Squire Patton Boggs (US) LLP
1801 California Street, Suite 4900
Denver, Colorado  80202
O  303 830 1776
F  303 894 9239
Brent.owen@squirepb.com
David.blake@squirepb.com

Eric J. Troutman
Emily L. Wallerstein
Squire Patton Boggs (US) LLP
555 South Flower Street, 31st Floor
Los Angeles, California 90071
O   213 624 2500
F    213 623 4581
eric.troutman@squirepb.com
emily.wallerstein@squirepb.com

Amy Brown Doolittle
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC  20037
O  202 457 6000
F   202 457 6315
amy.doolittle@squirepb.com

*Attorneys for Defendant HomeAdvisor, Inc.*