**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-2392

**JOUREY NEWELL**, individually and on behalf of a class of all persons and entities similarly situated,

      Plaintiff,

v.

**HOMEADVISOR, INC.**

      Defendant.

---

<u>**UNITED STATES OF AMERICA'S BRIEF IN SUPPORT OF THE
CONSTITUTIONALITY OF THE TELEPHONE CONSUMER PROTECTION ACT**</u>

---

## **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 3

ARGUMENT ...................................................................................................................... 6

I.      THE COURT SHOULD RESOLVE THE SEVERABILITY OF THE GOVERNMENT-
        DEBT EXCEPTION FIRST IN ORDER TO AVOID UNNECESSARY RESOLUTION
        OF A CONSTITUTIONAL QUESTION ........................................................................ 6

II.     IF THE COURT REACHES THE CONSTITUTIONAL ISSUE, IT SHOULD
        DETERMINE THAT THE AUTODIALER RESTRICTION IS NOT SUBJECT TO
        STRICT SCRUTINY .................................................................................................. 10

        A.      The Government-Debt Exception Does Not Render the Statute Content Based .. 13

        B.      The Emergency Call Exception Does Not Render the Statute Content Based ..... 14

        C.      This Court Has No Jurisdiction to Address the FCC's Regulations .................... 15

III.    IF THE COURT REACHES THE ISSUE, IT SHOULD DETERMINE THAT THE
        AUTODIALER RESTRICTION SURVIVES STRICT SCRUTINY ............................. 16

        A.      The Autodialer Restriction Furthers a Compelling Privacy Interest ................... 16

        B.      The Autodialer Restriction Is Narrowly Tailored ................................................ 18

IV.     THE AUTODIALER RESTRICTION IS NOT UNCONSTITUTIONALLY VAGUE . 19

CONCLUSION .................................................................................................................. 21

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ACA Int'l v. FCC*,
  885 F.3d 687 (D.C. Cir. 2018) ................................................................. 5

*Alaska Airlines, Inc. v. Brock*,
  480 U.S. 678 (1987) ................................................................................. 6

*Am. Ass'n of Political Consultants, Inc. v. FCC (AAPC)*,
  923 F.3d 159 (4th Cir. 2019), *cert. granted*,
  No. 19-631, 2020 WL 113070 (Jan. 10, 2020) ...................................... 2, 7

*Brickman v. Facebook*,
  230 F. Supp. 3d 1036 (N.D. Cal. 2017) ................................................. 18

*Carpenter v. United States*,
  138 S. Ct. 2206 (2018) ............................................................................. 3

*City of Chicago v. Morales*,
  527 U.S. 41 (1999) ................................................................................. 21

*Clearfield Tr. Co. v. United States*,
  318 U.S. 363 (1943) ............................................................................... 18

*Dimmitt v. Clearwater*,
  985 F.2d 1565 (11th Cir. 1993) ............................................................... 9

*Doctor John's, Inc. v. City of Roy*,
  465 F.3d 1150 (10th Cir. 2006) ............................................................. 21

*Dominquez v. Yahoo, Inc.*,
  894 F.3d 116 (3d Cir. 2018) ................................................................... 21

*Duguid v. Facebook, Inc.*,
  926 F.3d 1146 (9th Cir. 2019) ........................................................ *passim*

*FCC v. ITT World Commc'ns, Inc.*,
  466 U.S. 463 (1984) ............................................................................... 15

*Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*,
  703 F. App'x 929 (11th Cir. 2017), *cert. denied*, 138 S. Ct. 2623 (2018) ............................... 11

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ................................................................................. 6

*FTC v. Mainstream Mktg. Servs., Inc.*,
  345 F.3d 850 (10th Cir. 2003) ............................................. 17

*Gallion v. Charter Commc'ns, Inc.*,
  287 F. Supp. 3d 920 (C.D. Cal. 2018),
  *aff'd*, 772 F. App'x 604 (9th Cir. 2019)......................... 7, 17, 18

*Gomez v. Campbell-Ewald Co.*,
  768 F.3d 871 (9th Cir. 2014),
  *aff'd*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016)............ 10

*Greenley v. Laborers' Int'l Union of N. Am.*,
  271 F. Supp. 3d 1128 (D. Minn. 2017).................................. 16

*Gresham v. Swanson*,
  866 F.3d 853 (8th Cir. 2017), *cert. denied*, 138 S. Ct. 682 (2018)........... 8

*Hand v. Beach Entm't KC, LLC*,
  No. 4:18-cv-00668-NKL, 2019 WL 5654351 (W.D. Mo. Oct. 31, 2019)............... 9, 17, 19, 21

*Holt v. Facebook, Inc.*,
  240 F. Supp. 3d 1021 (N.D. Cal. 2017) ................................ 18

*In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,
  18 FCC Rcd. 14014 (2003)............................................... 4

*INS v. Chadha*,
  462 U.S. 919 (1983).................................................... 6

*Izzy Poco, LLC v. Town of Springdale*,
  No. 2:10-cv-559-RJS, 2015 WL 881513 (D. Utah Mar. 2, 2015) ............ 8

*Kirkeby v. Furness*,
  92 F.3d 655 (8th Cir. 1996) .......................................... 17

*Mais v. Gulf Coast Collection Bureau, Inc.*,
  768 F.3d 1110 (11th Cir. 2014) ....................................... 16

*Marks v. Crunch San Diego, LLC*,
  904 F.3d 1041 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019).......... 20, 21

*Maryland v. Universal Elections, Inc.*,
  729 F.3d 370 (4th Cir. 2013) ......................................... 10

*Mejia v. Time Warner Cable, Inc.*,
  No. 15-CV-6445 (JPO), 2017 WL 3278926 (S.D.N.Y. Aug. 1, 2017) ......... 16, 18

iii

*Mims v. Arrow Fin. Servs., LLC*,
    565 U.S. 368 (2012) ..................................................................................................... 3

*Moser v. FCC*,
    46 F.3d 970 (9th Cir. 1995) ...................................................................................... 10

*Patriotic Veterans, Inc. v. Hill*,
    137 S. Ct. 2321 (2017) ................................................................................................ 8

*Patriotic Veterans, Inc. v. Zoeller*,
    845 F.3d 303 (7th Cir. 2017) ........................................................................... 8, 11, 13

*Perrong v. Liberty Power Corp.*,
    No. CV 18-712 (MN), 2019 WL 4751936 (D. Del. Sept. 30, 2019) ............................ 7, 9, 17

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992) ................................................................................................... 14

*Rappa v. New Castle Cty.*,
    18 F.3d 1043 (3d Cir. 1994) ........................................................................................ 9

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ........................................................................................ 11, 14

*Regan v. Time, Inc.*,
    468 U.S. 641 (1984) ..................................................................................................... 6

*Sliwa v. Bright House Networks, LLC*,
    No. 2:16-cv-235-FTM-29MRM, 2018 WL 1531913 (M.D. Fla. Mar. 29, 2018),
    *interlocutory appeal denied*, No. 2:16-cv-235-FTM-29MRM, 2018 WL 2296779 (M.D. Fla.
    May 21, 2018) ......................................................................................................... 2, 7

*Spector Motor Serv. v. McLaughlin*,
    323 U.S. 101 (1944) .................................................................................................. 2, 6

*Susinno v. Work Out World Inc.*,
    862 F.3d 346 (3d Cir. 2017) ...................................................................................... 20

*US Fax Law Ctr., Inc. v. iHire, Inc.*,
    476 F.3d 1112 (10th Cir. 2007) .................................................................................. 17

*Valot v. Se. Local Sch. Dist. Bd. of Educ.*,
    107 F.3d 1220 (6th Cir. 1997) .................................................................................... 18

*Van Bergen v. Minnesota*,
    59 F.3d 1541 (8th Cir. 1995) ................................................................................. 8, 14

iv

*Ward v. Utah*,
   398 F.3d 1239 (10th Cir. 2005) ........................................................ 21

*Williams v. Brewer*,
   442 F.2d 657 (8th Cir. 1971) ........................................................... 20

*Wilson v. PL Phase One Operations L.P.*,
   No. CV DKC 18-3285, 2019 WL 4735483 (D. Md. Sept. 27, 2019) ............... 19

*Woods v. Santander Consumer USA Inc.*,
   No. 2:14-cv-02104-MHH, 2017 WL 1178003 (N.D. Ala. Mar. 30, 2017) ......... 2, 7, 9, 11

*Wreyford v. Citizens for Transp. Mobility, Inc.*,
   957 F. Supp. 2d 1378 (N.D. Ga. 2013) ............................................ 10

**Statutes**

28 U.S.C. § 2342(1) .......................................................................... 15

47 U.S.C. § 227 .............................................................................. 1

47 U.S.C. § 227(a)(1) ...................................................................... 19

47 U.S.C. § 227(b)(1) ...................................................................... 4

47 U.S.C. § 227(b)(1)(A) ................................................................. 14

47 U.S.C. § 227(b)(1)(A)(iii) ........................................................ 3, 11, 12

47 U.S.C. § 227(b)(1)(B) ................................................................. 14

47 U.S.C. § 227(b)(2)(B)(ii)(I) .......................................................... 15

47 U.S.C. § 227(b)(2)(C) .................................................................. 15

47 U.S.C. § 402(a) ........................................................................ 15

47 U.S.C. § 608 ........................................................................... 6, 9

Telephone Consumer Protrectoin Act of 1991,
   Pub. L. No. 102-243, 105 Stat. 2394 (1991) ...................................... 17

Bipartisan Budget Act of 2015,
   Pub. L. No. 114-74, 129 Stat. 584 (2015) ......................................... 4

**Regulations**

47 C.F.R. § 64.1200(f)(4) ........................................................................................ 14

**Legislative Materials**

137 Cong. Rec. H11291 (daily ed. Nov. 26, 1991) ...................................................... 14

137 Cong. Rec. S18557 (daily ed. Nov. 27, 1991) ...................................................... 14

S. Rep. No. 102-178 (1991) ........................................................................ 11, 14, 15, 17

**INTRODUCTION**

Defendant HomeAdvisor, Inc., has raised a constitutional challenge to the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").  As relevant here, Section 227(b)(1)(A)(iii) of the TCPA (the "autodialer restriction") prohibits the use of an automatic telephone dialing system ("ATDS") to make a call or send a text message to a cell phone without the user's prior express consent, unless the call or message is initiated for an emergency purpose or to collect a debt owed to or guaranteed by the United States (the "government-debt exception"). Defendant asks this Court to strike down the autodialer restriction because it allegedly is a content-based regulation of speech that fails to survive strict or intermediate scrutiny.  Defendant also argues that the definition of an ATDS is unconstitutionally vague.

Plaintiff Jourey Newell alleges in his Complaint that on April 18, 2019, he began receiving unsolicited, automated telemarketing calls from Defendant "to promote HomeAdvisor's services of connecting consumers to local home improvement contractors." Compl. ¶¶ 24, 31, ECF No. 1. Plaintiff seeks to bring this action on behalf of all individuals who received a call from Defendant promoting its services to their cellphone number through the use of an ATDS. *Id*. ¶ 42. Plaintiff and the purported class members he seeks to represent request statutory damages as well as injunctive and declarative relief. *Id*. at 10, Relief Sought. Defendant has moved to dismiss and to strike Plaintiff's class allegations. Def.'s Mot. to Dismiss, ECF No. 17 ("Def.'s Mot."). In its motion, Defendant argues that the TCPA is "an unconstitutional content-based restriction on speech," that cannot "pass scrutiny"; and that "the TCPA's definition of an ATDS, compounded by the failure of the Federal Communications Commission ('FCC') to provide adequate guidance, render Section 227(b)(1)(A)(iii) unconstitutionally vague." *Id*. at 1-2.

Although the United States has ample grounds on which to defend the TCPA autodialer restriction's constitutionality, the Court need not resolve that question in relation to the First Amendment challenge because the only plausible basis for such a challenge—the government-debt exception—is severable from the remainder of the restriction.  Consistent with longstanding principles of constitutional avoidance, the Court should avoid addressing the TCPA autodialer restriction's constitutionality under the First Amendment in light of the severability of the government-debt exception.  *See Spector Motor Serv. v. McLaughlin*, 323 U.S. 101, 105 (1944) ("If there is one doctrine more deeply rooted than any other in the process of constitutional adjudication, it is that we ought not to pass on questions of constitutionality . . . unless such adjudication is unavoidable.").[1]

If the Court does reach Defendant's constitutional contentions, it should conclude that they are without merit. Recently, the only courts to have held the TCPA's government-debt exception unconstitutional nonetheless held it severable from the valid remainder of the autodialer restriction. *See, e.g.*, *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*AAPC*), *cert. granted*, No. 19-631, 2020 WL 113070 (Jan. 10, 2020); *Duguid v. Facebook, Inc.*, 926 F.3d

---

[1] At least four courts in the Eleventh Circuit have followed this approach. *See Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-02104-MHH, 2017 WL 1178003, at *3-4, *3 n.6 (N.D. Ala. Mar. 30, 2017) (avoiding the constitutional question after holding that the government debt exception is severable); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FTM-29MRM, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018) (same), *interlocutory appeal denied*, No. 2:16-cv-235-FTM-29MRM, 2018 WL 2296779, at *3 (M.D. Fla. May 21, 2018); Order on Mot. to Dismiss at 17-21, *Schaevitz v. Braman Hyundai, Inc.*, No. 1:17-cv-23890 (S.D. Fla. Mar. 25, 2019), ECF No. 62 (same); Order at 9, *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 1:19-cv-20073 (S.D. Fla. Apr. 3, 2019), ECF No. 29 (same) (citing *Woods*, 2017 WL 1178003, at *3 n.6).

2

1146 (9th Cir. 2019).[2]  Because Defendant would remain liable under the autodialer restriction if the government-debt exception were severed, the Court should decline to address the exception's validity to avoid unnecessary constitutional adjudication.  Instead, it should find that the exception would be severable if unconstitutional, and would therefore have no impact on this case.

Even if the Court were to consider the government-debt exception, it would not render the TCPA content based, because the exception turns on relationship rather than content. But even if the provision was content based, it would still survive strict scrutiny because the overall autodialer restriction (including the government-debt exception) is narrowly tailored to protect a compelling privacy interest.

Finally, the autodialer restriction easily survives vagueness review, as it uses words of common understanding and provides comprehensible notice as to the types of devices that may be subject to the autodialer restriction.   For all of these reasons, Defendant's challenge to the constitutionality of the TCPA should be rejected.

## BACKGROUND

"Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370-71 (2012).  The ubiquity of cell phones only aggravates such problems.  "[I]ndividuals . . . compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences." *Carpenter v. United States*, 138 S. Ct. 2206, 2218 (2018).  As pertinent here, the

---

[2] The United States' petitions for rehearing in *AAPC* and *Duguid* were denied, but the Supreme Court recently granted the United States' petition for a writ of certiorari in *AAPC*. *See, e.g.*, *AAPC*, *cert. granted*, No. 19-631, 2020 WL 113070 (Jan. 10, 2020).

TCPA's autodialer restriction makes it unlawful:

> to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any [ATDS] . . . to any telephone number assigned to a . . . cellular telephone service . . . unless such call is made solely to collect a debt owed to or guaranteed by the United States.

47 U.S.C. § 227(b)(1)(A)(iii).

Congress added the final clause in November 2015 as part of the Bipartisan Budget Act of 2015. *See* Pub. L. No. 114-74, § 301, 129 Stat. 584, 588 (2015). The provision has long been interpreted to apply to both phone calls and text messages. *See In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 (2003).

Plaintiff Jourey Newell brings this purported class action for damages and injunctive relief under the autodialer provision of the TCPA, 47 U.S.C. § 227(b)(1). According to the Complaint, Plaintiff began receiving automated telemarketing calls from Defendant HomeAdvisor, Inc. on April 18, 2019. Compl. ¶ 24. Plaintiff claims that there was an extended pause—which he alleges is a "telltale sign of a predictive dialer," *id.* ¶ 26—after which a sales representative came on the line "to promote HomeAdvisor's services of connecting consumers to local home improvement contractors." *Id.* ¶ 31. Plaintiff alleges that he confirmed the sales representative was a HomeAdvisor employee by "feign[ing] interest in the sales pitch" and asking for an email from the sales representative, which he received. *Id.* ¶¶ 32-33. Plaintiff alleges that he received three additional telemarketing calls from the same sales representative on April 19 and 22, 2019. *Id.* ¶ 34. Plaintiff alleges that the sales representative's caller ID number was "'spoofed' in order to appear . . . as if it was coming from a local area code." *Id.* ¶ 36. Plaintiff alleges that his number was on the National Do Not Call Registry, *id.* ¶ 23, that he was not a customer of Defendant, and that he did not consent to receive telemarketing calls from Defendant. *Id.* ¶ 39.

4

Plaintiff further alleges that he was harmed by these calls in that he was "temporarily deprived of legitimate use of [his] phone[]," that his "privacy was improperly invaded," and that the calls were "frustrating, obnoxious, annoying, were a nuisance, and disturbed [his] solitude." *Id.* ¶ 40.

Plaintiff seeks to bring this action on behalf of all individuals who received a call from Defendant promoting its services to their cellphone number through the use of an ATDS. *Id.* ¶ 42. Plaintiff and the purported class members he seeks to represent request statutory damages of $500 and $1500 for both non-willful and willful violations of the TCPA, as well as injunctive and declaratory relief. *Id.* at Count I and Relief Sought.

Defendant has moved to dismiss and to strike Plaintiff's class allegations. Def.'s Mot. at 1. Defendant's motion to dismiss is based purely on constitutional grounds: it argues that the TCPA is "an unconstitutional content-based restriction on speech," that cannot "pass strict scrutiny"; and that "the TCPA's definition of an ATDS, compounded by the failure of the Federal Communications Commission ('FCC') to provide adequate guidance, render Section 227(b)(1)(A)(iii) unconstitutionally vague." *Id.* at 1-2. Regarding its First Amendment defense, Defendant argues that the TCPA is a content-based restriction not only because of the government-debt exception, but also because of the emergency exception and the FCC's regulatory exemption for healthcare-related calls. *Id.* at 4. Defendant argues that the government-debt exception cannot be severed and that the entire TCPA must be struck down. *Id.* at 7-8. With respect to its vagueness defense, Defendant argues that the statute "fail[s] to give a person of ordinary intelligence adequate notice of what constitutes an ATDS." *Id.* at 9. Defendant's vagueness argument is largely based on the D.C. Circuit's rejection of the FCC's 2015 Order broadening the definition of an ATDS in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018).

5

On October 7, 2019, along with its Motion to Dismiss, Defendant filed a Notice of Constitutional Question. *See* Def.'s Notice of Constitutional Challenge, ECF No. 16. On November 19, 2019, the United States acknowledged the constitutional question, and, with the consent of all parties, moved for additional time to determine whether to intervene in this matter. *See* ECF No. 30. On November 20, 2019, the Court granted that motion and ordered the United States to decide whether to intervene by January 14, 2020. *See* ECF No. 32. The United States hereby intervenes for the purpose of defending the constitutionality of the TCPA.

## ARGUMENT

### I. THE COURT SHOULD RESOLVE THE SEVERABILITY OF THE GOVERNMENT-DEBT EXCEPTION FIRST IN ORDER TO AVOID UNNECESSARY RESOLUTION OF A CONSTITUTIONAL QUESTION

The government-debt exception comports with the First Amendment and the Equal Protection Clause, but the Court need not reach that question because the exception is severable from the remainder of the TCPA's autodialer restriction, and a decision holding that severable provision unconstitutional would provide no party relief. Avoiding a decision on the autodialer restriction's constitutionality under the First Amendment and the Equal Protection Clause in light of the severability of the government-debt exception is part of a "deeply rooted" doctrine that instructs courts "not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." *Spector Motor Serv.*, 323 U.S. at 105.

If the government-debt exception were held unconstitutional, the remedy would be to strike the offending exception, not to invalidate the entirety of the TCPA's autodialer restriction. *See, e.g.*, *INS v. Chadha*, 462 U.S. 919, 931-32 (1983) ("[T]he invalid portions of a statute are to be severed 'unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not.'" (citation omitted)). "Whether an

6

unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability." *Regan v. Time, Inc.*, 468 U.S. 641, 653 (1984); *see Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010). "[T]he invalid part may be dropped if what is left is fully operative as a law," *Regan*, 468 U.S. at 653, and would continue to "function in a manner consistent with the intent of Congress," *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 685 (1987) (emphasis omitted). Here, Congress provided an express severability provision, 47 U.S.C. § 608, and the statute operated for more than two decades before the government-debt exception was added, leaving no doubt that Congress would have intended the autodialer restriction to continue to function in the exception's absence. The courts that have addressed this issue have unanimously found the exception severable. *See, e.g.*, *AAPC*, 923 F.3d at 171 (finding the exception severable); *Duguid,* 926 F.3d at 1156-57 (same); *Gallion v. United States*, 772 F. App'x 604, 606 (9th Cir. 2019) (same, following *Duguid*); *Perrong v. Liberty Power Corp.,* No. CV 18-712 (MN), 2019 WL 4751936, at *7 (D. Del. Sept. 30, 2019) (same) (citing *Duguid*, *AAPC*, and others).

Numerous courts have therefore concluded that it is unnecessary to weigh in on the constitutional challenge in the context of the government-debt exception context. *See Woods v. Santander Consumer USA Inc.*, No. 2:14-cv-02104-MHH, 2017 WL 1178003, at *3 n.6 (N.D. Ala. Mar. 30, 2017) (explaining that even if the court were to find that the government-debt exception rendered the TCPA unconstitutional, it would be irrelevant because the court would find the exception severable); *Sliwa v. Bright House Networks, LLC*, No. 2:16-cv-235-FTM-29MRM, 2018 WL 1531913, at *6 (M.D. Fla. Mar. 29, 2018) (concluding that because the government-debt exception is severable from the remainder of Section 227(b)(1)(A)(iii), and that, because the exception had no impact on the question of that defendant's liability, the defendant was not entitled

7

to judgment on the pleadings on the basis of the alleged facial unconstitutionality of the TCPA); Order at 17-21, *Schaevitz v. Braman Hyundai*, No. 1:17-cv-23890-KMM (S.D. Fla. Mar. 25, 2019), ECF No. 62 (noting that even if the government-debt exception could be found to be problematic, it was severable); and Order at 9, *Wijesinha v. Bluegreen Vacations Unlimited, Inc.*, No. 1:19-cv-20073 (S.D. Fla. Apr. 3, 2019), ECF No. 29 (concluding that even "[i]f the Court were to find the amended TCPA unconstitutional, the proper action would be to sever the offensive provisions") (citing *Woods*, 2017 WL 1178003, at *3 n.6)).

Other Circuits have adopted this approach to severable exceptions when considering state statutes similar to the TCPA.  *See, e.g.*, *Gresham v. Swanson*, 866 F.3d 853, 854-55 (8th Cir. 2017) (declining to consider severable content-based exception in determining constitutionality of Minnesota's state-law TCPA analog), *cert. denied*, 138 S. Ct. 682 (2018); *Patriotic Veterans, Inc. v. Zoeller*, 845 F.3d 303, 305 (7th Cir. 2017) (same with respect to Indiana's state-law TCPA analog), *cert. denied sub nom*, *Patriotic Veterans, Inc. v. Hill*, 137 S. Ct. 2321 (2017); *Van Bergen v. Minnesota*, 59 F.3d 1541, 1551 (8th Cir. 1995) ("Even assuming, without deciding," that the exception is content based, if "it does not apply to [the party challenging the statute, it] . . . is not before the court in this case.").

While no court in the Tenth Circuit has addressed this avoidance issue in the context of the TCPA, an instructive example from within this circuit is *Izzy Poco, LLC v. Town of Springdale*, No. 2:10-cv-559-RJS, 2015 WL 881513, at *1 (D. Utah Mar. 2, 2015), in which the plaintiff raised a constitutional challenge to a town ordinance prohibiting franchise restaurants.  The court declined to reach the constitutional challenge, however, after determining that striking down the ordinance would provide no relief to the plaintiff, since the plaintiff's application for a restaurant license had been rejected for reasons independent of the ordinance.  *Id.* at *3.  As a result, the court

8

determined that striking down the ordinance would "contravene separation-of-powers principles by rendering the court's order an advisory opinion that professed the law without actually resolving a dispute (i.e., redressing a legally cognizable injury caused by the defendant)." *Id.* The same is true here. Even if the government-debt exception were struck down, Defendant would still remain liable under the autodialer restriction.

Despite this history, Defendant still maintains that the TCPA should be struck down in its entirety, despite acknowledging that the Fourth and Ninth Circuits severed the government-debt exception from the remainder of the TCPA. Def.'s Mot. at 7 (recognizing *AAPC* and *Duguid*). Defendant attempts to find support for its position in *Rappa v. New Castle Cty.*, 18 F.3d 1043 (3d Cir. 1994), where the Third Circuit struck down an entire statute restricting speech rather than the exception to the statute.[3] But *Rappa* is easily distinguishable—it involved a general Delaware state severance provision, and there was nothing in the legislative history of the law at issue indicating that the legislature would prefer severance. Even the court in *Rappa* acknowledged that "specific evidence of legislative preference for elimination of the exception" would favor severance. *Id.* at 1073. The "specific evidence" here is the TCPA's express severability provision, 47 U.S.C. § 608, and the autodialer restriction's long history of functioning in the absence of the government-debt exception. *See Duguid*, 926 F.3d at 1156-57 (distinguishing *Rappa*); *Perrong*, 2019 WL 4751936, at *7 (distinguishing *Rappa* and explaining that "'there is no evidence that Congress would not have enacted the TCPA without the exception for government debt'" (quoting *Woods*, 2017 WL 1178003, at *3 n.6)); *Hand v. Beach Entm't KC, LLC*, No. 4:18-cv-00668-NKL,

---

[3] In its Reply at 6, ECF No. 29, Defendants also relies on *Dimmitt v. Clearwater*, 985 F.2d 1565 (11th Cir. 1993). *Dimmitt* is not relevant as it does not discuss the existence of a severability clause.

2019 WL 5654351, at *15-16 (W.D. Mo. Oct. 31, 2019) (same).   Every court to consider Defendant's *Rappa*-based argument against severance in the TCPA context has rejected it.   *See, e.g., Duguid*, 926 F.3d at 1156-57; *Perrong*, 2019 WL 4751936, at *7; and *Hand*, 2019 WL 5654351, at *15-16.

Thus, after determining that the government-debt exception is severable, the Court should go no further and instead decline to reach the exception's constitutionality to avoid unnecessary constitutional adjudication.[4]

## II.   IF THE COURT REACHES THE CONSTITUTIONAL ISSUE, IT SHOULD DETERMINE THAT THE AUTODIALER RESTRICTION IS NOT SUBJECT TO STRICT SCRUTINY

Should the Court decide to reach the constitutionality of the government-debt exception, it should reject Defendant's contention that the exception renders the autodialer provision content based and subject to strict scrutiny.   *See* Def.'s Mot. at 4-7.   As a baseline matter, it is worth recalling that prior to the addition of the government-debt exception in 2015, courts had long held that the pre-2015 version of the autodialer restriction was a content-neutral, time-place-and-manner restriction on speech.   *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 876 (9th Cir. 2014) (holding that § 227(b)(1)(A)(iii) is a valid time-place-and-manner restriction), *aff'd*, 136 S. Ct. 663 (2016), *as revised* (Feb. 9, 2016); *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 376-77 (4th Cir. 2013) ("The district court properly determined that the TCPA is a content-neutral law to

---

[4] Defendant argues that if the Court were to sever without addressing the constitutional issue, it would disincentivize individuals from bringing such challenges.   Def.'s Mot. at 8.   But avoiding the constitutional question here does not insulate the government-debt exception from review; rather, it ensures that the constitutional issue is reached only when presented by an appropriate party.   An individual receiving unwanted debt-collection calls pursuant to the exception could challenge the provision, and the Court could consider the constitutionality of the exception in circumstances in which its validity determines the availability of relief.

which intermediate scrutiny must be applied. . . .  [It] furthers important government interests . . . [and] the TCPA's restrictions do not burden substantially more speech than is necessary to protect those interests."); *Moser v. FCC*, 46 F.3d 970, 973-75 (9th Cir. 1995) (holding that the TCPA is content neutral and survives intermediate scrutiny); *Wreyford v. Citizens for Transp. Mobility, Inc.*, 957 F. Supp. 2d 1378, 1380-82 (N.D. Ga. 2013) (upholding § 227(b)(1)(A) as valid time, place, and manner restriction).  The Supreme Court's decision in *Reed* did not abrogate those decisions. *See Patriotic Veterans*, 845 F.3d at 306 (collecting cases upholding the TCPA's constitutionality under intermediate scrutiny and explaining that those decisions "have not been called into question by *Reed*"); *Woods*, 2017 WL 1178003, at *4-5 (holding, after *Reed*, that the pre-amendment version was content neutral and satisfied intermediate scrutiny).

The ordinance invalidated in *Reed* purported to impose general limits on the display of outdoor signs, but was in fact riddled with twenty-three different exemptions.  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2224 (2015).  It aimed to maintain the town's aesthetic appeal and to promote traffic safety, *id.* at 2231, but it distinguished between signs (political, ideological, etc.) that seemed equally likely to detract from the town's beauty or add to its traffic, *see, e.g.*, *id.* at 2231-32.  The Supreme Court therefore concluded that the ordinance was content based and could not survive strict scrutiny.  *Reed* did not purport to overrule existing precedent or radically alter First Amendment jurisprudence.  *Patriotic Veterans*, 845 F.3d at 306; *see also Flanigan's Enters., Inc. of Ga. v. City of Sandy Springs*, 703 F. App'x 929, 934 (11th Cir. 2017) (*per curiam*) (rejecting argument that *Reed* "radically . . . altered the landscape of First Amendment jurisprudence"), *cert. denied*, 138 S. Ct. 2623 (2018).

Whereas in *Reed* the Supreme Court found it problematic that the ordinance created twenty-three exceptions that seemed equally likely to detract from the town's beauty or add to its

traffic, the TCPA operates in an entirely different fashion. Congress enacted the TCPA "to protect the privacy interests of residential telephone subscribers." S. Rep. No. 102-178, at 1 (1991). The statute does so, in part, by prohibiting one narrow category of calls to wireless numbers: those made using an ATDS or an artificial or pre-recorded voice and directed at a cell phone belonging to a recipient who has not previously consented to receive the calls. 47 U.S.C. § 227(b)(1)(A)(iii). The statute does not differentiate among calls depending on whether they are ideological, political, or commercial in nature. *Id.*

The only difference between the pre-2015 version of the TCPA that has long been upheld as constitutional, and the post-2015 version is the government-debt exception. Strangely, in its Reply brief, *see* ECF No. 29, Defendant states that it "is not challenging the constitutionality of the government-backed debt exception." *Id.* at 5. If that is so, Defendant's motion should be denied under the pre-2015 jurisprudence cited above. However, Defendant also argues that in light of *Reed*, and the Fourth and Ninth Circuits' decisions in *AAPC* and *Duguid*, respectively, the TCPA is a content-based restriction on speech that is subject to—and ultimately does not satisfy—strict scrutiny. Def.'s Mot. at 4. In fact, Defendant argues that *AAPC* and *Duguid* did not go far enough—those cases only focused on the government-debt exception and not the autodialer restriction's emergency call exception, *see* 47 U.S.C. § 227(b)(1)(A)(iii), or the FCC-created exemptions for certain healthcare calls. *See* Def.'s Mot. at 4 & n.2 (citing FCC regulations).

Even though it is difficult to understand precisely what Defendant seeks to challenge in its motion, the government will assume for purposes of this memorandum that Defendant believes that all three "exceptions" in the TCPA—for (1) government debt, (2) emergency calls, and (3) FCC-created exemptions for certain healthcare calls—render the statute content-based and ultimately invalid. Each of these challenges lacks merit. Although the Fourth and Ninth Circuits

12

in *AAPC* and *Duguid*/*Gallion*, respectively, held that the TCPA's government-debt exception violated the First Amendment, those decisions were in error.  The lines drawn by the TCPA in no way resemble the lines drawn by the ordinance invalidated in *Reed*.  Moreover, no courts have held that either the emergency exception or the FCC's regulations convert the TCPA's autodialer restriction into a content-based restriction.

### A.   The Government-Debt Exception Does Not Render the Statute Content Based

Defendant argues that the Court should follow the Fourth and Ninth Circuits in *AAPC* and *Duguid*/*Gallion* and deem the government-debt exception an unconstitutional content-based exception to the TCPA's autodialer restriction.  Def.'s Mot. at 4.  Defendant specifically highlights *Duguid*'s holding that the "exception depends exclusively on the purpose and content of the call."  Reply at 4 (quoting *Duguid*, 926 F.3d at 1154).

The Ninth Circuit's conclusion was wrong.  The government-debt exception does not depend on the content of the message.  For example, a person could receive two identical debt-collection calls that convey the same content—i.e., "Your student loan from Citibank is past due; please visit your online account to make a payment"—and the TCPA might treat the calls differently depending on whether there exists an underlying relationship between the government and the debtor receiving the call.  The fact that the exception may treat identical calls differently underscores that its impact is principally based on the existence of a particular economic relationship between the federal government and the person being called rather than the content of the call.  Debt collection, by its very nature, is limited to communications with those who have a legal relationship to the debt.  Multiple courts of appeals have held that relationship-based exceptions to content-neutral restrictions on speech do not render those restrictions content based.

13

*See Patriotic Veterans*, 845 F.3d at 304-05 (exceptions to Indiana's anti-robocall statute, including for "[m]essages from school districts to students, parents, or employees," were not content based because they "depend on the relation between the caller and the recipient, not on what the caller proposes to say"); *Van Bergen*, 59 F.3d at 1550 (Minnesota's anti-robocall statute with "central provision" that "applies to all callers, with three exceptions . . . based on relationship rather than content" was not content based).  Like the exceptions in *Van Bergen* and *Patriotic Veterans*, the government-debt exception is a relationship-based carve-out from a content-neutral restriction, and does not render the TCPA content based.  Even if the Court disagrees, the government-debt exception survives strict scrutiny as discussed below, *see infra* Part III, and even if the Court concludes that it does not survive strict scrutiny, it is undoubtedly severable, *see supra* Part I.

### B.      The Emergency Call Exception Does Not Render the Statute Content Based

The TCPA exempts calls made "for emergency purposes," 47 U.S.C. § 227(b)(1)(A), (B), which includes any calls "made necessary in any situation affecting the health and safety of consumers," 47 C.F.R. § 64.1200(f)(4); *see also* S. Rep. No. 102-178, at 10 ("In general, any threat to the health or safety of the persons in a residence should be considered an emergency."). Examples of calls that might be made for emergency purposes include notifications of impending or current power outages, 137 Cong. Rec. H11,291, H11,313 (daily ed. Nov. 26, 1991); 137 Cong. Rec. S18,557, S18,784 (daily ed. Nov. 27, 1991), or of natural disasters or health-related evacuations, 137 Cong. Rec. H11,313.

That the TCPA exempts emergency calls does not render the statute content-based. Emergency calls do not implicate the privacy concerns Congress sought to guard in enacting the TCPA.  Where significant government interests permit a blanket prohibition, the Supreme Court has noted, it is not content-based discrimination to exempt from that prohibition a narrow band of speech that is unrelated to the significant government interest at stake.  *R.A.V.*

*v. City of St. Paul*, 505 U.S. 377, 388 (1992); *see also Reed*, 135 S. Ct. at 2235 (Breyer, J.,

concurring in the judgment) (citing *R.A.V.* as continued exception to application of strict

scrutiny).  Here, Congress enacted legislation aimed at protecting an interest in privacy.

Congress determined that because of the vast number of companies using automated systems

and the advances in technology making it cost effective to do so, most unsolicited, automated

calls had the effect of invading privacy and creating an unwanted nuisance for consumers.  *See*

S. Rep. No. 102-178, at 2.  But such effects do not accompany emergency calls, which are

likely to be met by recipients with appreciation, rather than annoyance, and to be rare and

unobtrusive, instead of repetitive and invasive.  *Id.* at 5 & n.5.  The TCPA, in attempting to

protect privacy by limiting the effects of unwanted automated calls, excludes emergency calls

as part of Congress's intent to regulate only that speech which furthers the privacy interest.

Thus, the same hallmarks of invidious content discrimination that were present in *Reed* are not

present here.

### C.      This Court Has No Jurisdiction to Address the FCC's Regulations

The TCPA allows the FCC to exempt calls where doing so would "not adversely affect

the privacy rights" that the TCPA seeks to protect.  *See* 47 U.S.C. § 227(b)(2)(B)(ii)(I),

(b)(2)(C).  Defendant is foreclosed from arguing that any FCC regulations drawing upon this

authority render the TCPA unlawful because this Court is jurisdictionally barred from

considering any implied or collateral challenge to FCC orders issued pursuant to this

provision.  *See* 47 U.S.C. § 402(a); *see also* 28 U.S.C. § 2342(1).  Defendant cannot, under the

guise of a constitutional challenge to the TCPA, place the legitimacy of those FCC orders in

question in a district court proceeding because "[t]he court of appeals [other than the Federal

Circuit] has *exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), *or to*

15

*determine the validity of* . . . all final orders of the Federal Communications Commission made reviewable by [47 U.S.C. § 402(a)]." 28 U.S.C. § 2342(1) (emphases added); *FCC v. ITT World Commc'ns, Inc.*, 466 U.S. 463, 468 (1984); *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1120 (11th Cir. 2014) (Section 2342's "jurisdictional analysis looks to the 'practical effect' of a proceeding, not the plaintiff's central purpose for bringing suit" (citation omitted)). Every court to review the TCPA, including after *Reed*, has declined to consider specific FCC orders in determining whether the TCPA is constitutionally valid. *See, e.g.*, *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1149 (D. Minn. 2017) ("Because this Court lacks jurisdiction to entertain a constitutional challenge as it pertains to FCC orders, the Court does not consider those exceptions for the purpose of this analysis [of the constitutionality of the TCPA]."); *Mejia v. Time Warner Cable, Inc.*, No. 15-CV-6445 (JPO), 2017 WL 3278926, at *15 n.7 (S.D.N.Y. Aug. 1, 2017). Finally, even if FCC orders were reviewable and found unconstitutional, they would be severable just as the government-debt exception is.

## III.   IF THE COURT REACHES THE ISSUE, IT SHOULD DETERMINE THAT THE AUTODIALER RESTRICTION SURVIVES STRICT SCRUTINY

If the Court finds that the TCPA's autodialer provision is content based, such that strict scrutiny applies, it should nevertheless uphold the provision under that standard of review.

### A.   The Autodialer Restriction Furthers a Compelling Privacy Interest

Defendant argues that the autodialer restriction does advance a compelling interest, but defines that interest narrowly as "to stop one very specific type of telemarketing practice— dialing randomly and sequentially generated numbers—not to protect a vague and undefined privacy interest." Def.'s Mot. at 6. Defendant's narrow conception of the compelling interest

16

behind Congress' enactment of the autodialer restriction has no support in the law.  In fact,

Defendant contradicts itself in its next breath by conceding that Congress' interest was broader:

"[i]n enacting the TCPA, Congress was concerned with 'residential telemarketing practices' and

'intrusive invasion[s]' into residential privacy." *Id*. at 6 (quoting Pub. L. No. 102-243, §2, ¶¶ 5,

7, 105 Stat. 2394, 2394 (1991).

As the Tenth Circuit has stated, "Congress enacted the TCPA to 'protect the privacy

interests of residential telephone subscribers by placing restrictions on unsolicited, automated

telephone calls to the home and to facilitate interstate commerce by restricting certain uses of

[fax] machines and automatic dialers.'" *US Fax Law Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112,

1118–19 (10th Cir. 2007) (quoting S. Rep. No. 102-178, at 1, *as reprinted in* 1991 U.S.C.C.A.N

1968, 1968); *see also FTC v. Mainstream Mktg. Servs., Inc.*, 345 F.3d 850, 857 (10th Cir. 2003)

("In the TCPA, Congress found that unrestricted telemarketing can be an intrusive invasion of

privacy and that many consumers are outraged by the proliferation of intrusive calls to their

homes from telemarketers.").  Thus "individuals harmed by unsolicited telephone calls or faxes,"

are permitted to bring suit under the law.  *iHire, Inc*., 476 F.3d at 1119.

Aside from one outlier decision, *Hand v. Beach Entm't*, 2019 WL 5654351, at *13, in

which the district court believed that Eighth Circuit precedent foreclosed a finding that residential

privacy could *ever* be a compelling interest, *see id.* (citing *Kirkeby v. Furness*, 92 F.3d 655, 659 (8th

Cir. 1996)), every court to have considered the issue has held that the TCPA's general restriction

on autodialed calls promotes a compelling interest in protecting privacy.  *See, e.g.*, *Perrong*,

2019 WL 4751936, at *5 ("[T]he Court concludes that protecting the 'well-being, tranquility,

and privacy' of the individual's residential privacy is a compelling state interest."); *Gallion v.

Charter Commc'ns, Inc.*, 287 F. Supp. 3d 920, 928 (C.D. Cal. 2018) (agreeing with "consensus

17

view among district courts that the TCPA serves a compelling government interest in protecting residential privacy"), *aff'd*, 772 F. App'x 604 (9th Cir. 2019); *Brickman v. Facebook*, 230 F. Supp. 3d 1036, 1046 (N.D. Cal. 2017) ("[T]he Court holds the TCPA [as amended] serves a compelling government interest in promoting residential privacy."); *Holt v. Facebook, Inc.*, 240 F. Supp. 3d 1021, 1034 (N.D. Cal. 2017) (same); *Mejia*, 2017 WL 3278926, at *16 (compelling government interest in protecting residential privacy "also extend[s] to cell phones").

While the government-debt exception's compelling government interest is unrelated to privacy, "the federal government's interest in collecting debts owed to it supports the finding of a particularly compelling interest in exempting calls made for the purposes of collecting government debts." *Mejia*, 2017 WL 3278926, at *16 (citing *Clearfield Tr. Co. v. United States*, 318 U.S. 363, 366 (1943)); *see also Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1227 (6th Cir. 1997) ("Protecting the public fisc ranks high among the aims of any legitimate government."). Defendant does not argue otherwise.

## B.    The Autodialer Restriction Is Narrowly Tailored

Defendant next contends that even if the autodialer restriction serves a compelling interest, it is not narrowly tailored because it is overinclusive. *See* Def.'s Mot. at 6-7. Defendant appears to be arguing that the autodialer restriction is overbroad because it reaches Defendant's "technology" in the absence of any "allegation that HomeAdvisor's 'predictive dialer' employs the type of random or sequential number generation that the TCPA was designed to prevent to avoid tying up phone lines." *Id.* at 7. The government takes no position on whether Plaintiff adequately alleged that Defendant's technology constitutes an ATDS under the TCPA. However, the government notes that Defendant did not move to dismiss on this ground. Plaintiff alleges that "[w]hen Mr. Newell picked up the phone, there was a long pause before a sales

representative finally came on the line to greet him." Compl. ¶ 25.  Plaintiff further alleges that this "extended pause is a telltale sign of a predictive dialer[] . . . [which] dials thousands of numbers at once and only transfers the call to a live agent once a human being is on the line." *Id.* ¶¶ 26-27.  Assuming that the Court takes these allegations as true at the motion to dismiss stage, Defendant offers no reason why the TCPA is overbroad in restricting ATDS technology.  The autodialer restriction's prohibition on unwanted robocalls is narrowly tailored because it restricts a limited method of communication—the use of certain technologies in placing calls—and only without the consent of the called party, making it closely drawn to the unwanted intrusions it aims to prevent.  Indeed, the facts of this case demonstrate the autodialer restriction's appropriate sweep:  should Defendant wish to contact prospective customers, it may use an autodialer to do so after obtaining the person's consent, or may contact the person without using an autodialer.

## IV. THE AUTODIALER RESTRICTION IS NOT UNCONSTITUTIONALLY VAGUE

Defendant erroneously asserts that the autodialer restriction's definition of an ATDS is unconstitutionally vague.  Def.'s Mot. at 8-11.  The TCPA defines an ATDS as follows:

> The term "automatic telephone dialing system" means equipment which has the capacity—
>
> (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>
> (B) to dial such numbers.

47 U.S.C. § 227(a)(1).

Defendant cites no case holding this definition to be unconstitutionally vague; to the contrary, at least two courts have rejected a vagueness challenge to Section 227(a)(1) within the last several months.  *See Hand*, 2019 WL 5654351, at *22 ("The ATDS definition is not

19

unconstitutionally vague."); *Wilson v. PL Phase One Operations L.P.*, No. CV DKC 18-3285, 2019 WL 4735483, at *7 (D. Md. Sept. 27, 2019) ("[A]lthough technical, the TCPA's definition of an ATDS is set out in terms that an ordinary person exercising ordinary common sense can understand sufficiently and comply with."); *see also Susinno v. Work Out World Inc.*, 862 F.3d 346, 349 n.1 (3d Cir. 2017) ("[W]e would not find the TCPA void for vagueness where, as here, it neither 'fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits,' nor 'authorizes or even encourages arbitrary and discriminatory enforcement.'") (citation omitted)).   And although Defendant complains that there is currently no FCC regulation providing additional interpretive guidance regarding what qualifies as an ATDS, *see* Def.'s Mot. at 10, the TCPA was in effect for more than a decade after its passage without such a regulation, *see Marks v. Crunch San Diego, LLC*, 904 F.3d 1041, 1045 (9th Cir. 2018), *cert. dismissed*, 139 S. Ct. 1289 (2019), and it does not appear that the statute was seriously questioned on vagueness grounds during that time.

At bottom, Defendant's vagueness challenge rests solely on the fact that the Third and Ninth Circuits have reached different conclusions as to whether certain devices qualify as an ATDS.  *See* Def.'s Mot. at 10-11.  But a statute does not become vague every time two courts interpret it differently.  *See, e.g.*, *Williams v. Brewer*, 442 F.2d 657, 660 (8th Cir. 1971) ("A statute is not necessarily void for vagueness simply because it may be ambiguous or open to two constructions.").  And the definition here easily clears the low bar to avoid unconstitutional vagueness.  As one court recently explained, the statute "uses common words that give a person of ordinary intelligence a reasonable opportunity to know the types of dialing systems the TCPA prohibits," and the court further noted that the statute introduced no element of unfairness, since "[a] caller of ordinary intelligence is on notice that if they use a system that is storing or

20

producing numbers using a random or sequential number generator, and then dialing those numbers, they may come within the scope of the statute's prohibition." *Hand*, 2019 WL 5654351, at \*22.

In fact, the cases cited by Defendant demonstrate that courts have had no trouble applying the standard tools of statutory interpretation to construe the statute, underscoring that the definition is not vague. *See Dominquez v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018); *Marks*, 904 F.3d at 1051 ("Because the statutory language is ambiguous, we look at the context and the structure of the statutory scheme."); *see also Duguid*, 926 F.3d at 1150 (confirming that *Marks* "clarif[ied] any ambiguity" about the definition of an ATDS).

Finally, it is worth remembering that Defendant brings a facial vagueness challenge, which is disfavored. "'Facial challenges are strong medicine,' and thus [courts] 'must be vigilant in applying a most exacting analysis to such claims.'" *Doctor John's, Inc. v. City of Roy*, 465 F.3d 1150, 1157 (10th Cir. 2006) (quoting *Ward v. Utah*, 398 F.3d 1239, 1246-47 (10th Cir. 2005)). "[F]or this reason . . . a party must show, at a minimum, that the challenged law would be vague in the vast majority of its applications; that is, that 'vagueness permeates the text of [the] law.'" *Id.* (quoting *City of Chicago v. Morales*, 527 U.S. 41, 55 (1999)). Even if, on the margins, there are certain types of devices that would present close questions as to whether they would qualify as an ATDS, Defendant in no way demonstrates that the definition of an ATDS would be vague with respect to "the vast majority" of potential ATDS devices.

## CONCLUSION

For the foregoing reasons, the United States respectfully urges that the Court uphold the constitutionality of the TCPA and deny Defendant's constitutional challenge.

Respectfully submitted this 14th day of January, 2020,

JOSEPH H. HUNT
Assistant Attorney General

ERIC R. WOMACK
Assistant Director, Federal Programs Branch

*/s Jonathan Kossak*
JONATHAN D. KOSSAK
Trial Attorney (D.C. Bar No. 991478)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20530
(202) 305-0612 (tel.)
(202) 616-8470 (fax)
jonathan.kossak@usdoj.gov

*Counsel for United States of America*

22

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2020, a copy of the foregoing pleading was filed electronically via the Court's ECF system which sent notification of such filing to counsel of record for all parties.

<u>/s Jonathan Kossak</u>
JONATHAN D. KOSSAK
Trial Attorney (D.C. Bar No. 991478)
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20530
(202) 305-0612 (tel.)
(202) 616-8470 (fax)
jonathan.kossak@usdoj.gov

*Counsel for United States of America*